The State of Ohio, Appellant, *v.* Smith, Appellee.

(No. 78-411—Decided December 7, 1978.)

406

Mr. *John T. Corrigan*, prosecuting attorney, and *Mr. George J. Sadd*, for appellant.
Mr. *Edgar H. Boles*, for appellee.

PAUL W. BROWN, J. The only issue before this court is whether the officer's search and seizure of the weapon located beneath the driver's seat constituted an unreasonable, and therefore unlawful, search and seizure, in violation of the Fourth and Fourteenth Amendments to the United States Constitution, so as to require suppression of the weapon from introduction in evidence. *Mapp* v. *Ohio* (1961), 367 U. S. 643.

The Fourth Amendment prohibits only those searches and seizures which are unreasonable. *Harris* v. *United States* (1947), 331 U. S. 145. Searches conducted outside

the judicial, process, without a warrant, are *per se* unreasonable, subject to a few specifically established exceptions. *Katz* v. *United States* (1967), 389 U. S. 347, 357. One of these exceptions is set forth in *Terry* v. *Ohio* (1968), 392 U. S. 1, which this court now holds governs this appeal.

In *Terry*, the court was concerned with striking a balance between the safeguarding of a person's right to be free from unreasonable searches and seizures and protecting a police officer from bodily harm and preventing and deterring crime where there is less than probable cause to make an arrest and conduct a full incidental search of a suspect. The court found, at page 27, that the proper balance must "permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." An officer may therefore *initiate* a protective search when his suspicions are reasonably aroused.

The permissible *scope* of such a search is stated by the court, at pages 25 and 26, as follows:

"A search for weapons in the absence of probable cause to arrest * * * must, like any other search, be strictly circumscribed by the exigencies which justify its initiation. * * * Thus it must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby, and may realistically be characterized as something less than a 'full' search, even though it remains a serious intrusion."

In *Adams* v. *Williams* (1972), 407 U. S. 143, at page 146, the court restated the permissible scope of a *Terry*-type search:

"* * * So long as the officer is entitled to make a forcible stop, and has reason to believe that the suspect is

armed and dangerous, he may conduct a weapons search limited in scope to this protective purpose.''

Although *Terry* and *Adams* involved intrusions of one's person, the policy which justified an incidental and limited search of the person likewise permits an officer to conduct a restricted protective search of an area where suspicious conduct is observed.[1] We would be hard pressed to explain how an officer may stop and frisk an individual under the authority of *Terry* where suspicious movements give rise to reasonable fears, yet not allow the officer a limited inspection of the same location where the movement was sighted which aroused the fear that justified the stop and frisk. The United States Supreme Court stated in *Chimel* v. *California* (1969), 395 U. S. 752, at page 763, in the context of a search incident to an arrest, that:

''* * * There is ample justification * * * for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.'' The authority cited by the court to permit such area searches was *Terry*, based on its holding that searches motivated and limited by the objective of protection are reasonable.

Our inquiry must, therefore, be twofold: whether the search and seizure of the weapon was initiated under justifying circumstances, and if so, did the scope of the search exceed permissible purposes?

The propriety of the officers' act of stopping the defendant for running a red light is not disputed. What began as an ordinary traffic violation, however, ceased to be routine when Officer Lynch observed the defendant's furtive movement under the front seat, a movement in apparent response to the officer's approach. The fact that Officer Lynch apprehended possible danger is indicated by

---

[1] In support of this proposition, see: *Commonwealth* v. *Silva* (1974), 366 Mass. 402, 318 N. E. 2d 895; *State* v. *Wausnock* (Del. 1973), 303 A. 2d 636; *United States* v. *Thomas* (D. C. App. 1974), 314 A. 2d 464; *United States* v. *Green* (C. A. D. C. 1972), 465 F. 2d 620.

the precautionary actions he took. The defendant was ordered to get out of the vehicle and place his hands atop the station wagon by the side rear door. The officer also positioned himself so as to carefully observe the defendant while he, the officer, checked the area of the suspicious movement.

Subjective fear is not sufficient though. An officer's concern must be reasonable; *i. e.*, "it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate? * * *" *Terry, supra,* at pages 21-22.

A consideration of the totality of facts leads this court to find that the officer's search was reasonably initiated. The confrontation occurred at approximately 3:40 a. m. in an area apparently alluded to by the trial court as being unsafe. In this setting Officer Lynch observed the suspicious movement of the defendant, in combination with the defendant's seeming attempt to remove himself from the vehicle, and the vicinity of the weapon, on his own initiative. The law does not require that an officer wait until the point of peril to take protective action. It is sufficient that he has a reasonable basis to believe that his safety requires a search or seizure. The search was thus proper at its inception.[2]

The second and final inquiry is whether the search, proper in its inception, exceeded permissible bounds. Based on *Terry, Adams* and *Chimel, supra,* we believe that it did not. The officer's search was narrowly confined to the area toward which the defendant's suspicious conduct was directed. The fact that this involved a restricted search of the vehicle rather than the defendant's person does not make the search unreasonable in scope. An ac-

---

[2]Indeed, we believe these facts would be sufficient to establish probable cause to conduct such a search, a higher standard than need be met under *Terry, supra. Carroll* v. *United States* (1925), 267 U. S. 132; *State* v. *Kessler* (1978), 53 Ohio St. 2d 204.

cessible weapon presents no less danger to an officer when located in close proximity to, rather than on, a suspect. As the search was properly circumscribed by the officer's purpose to proceed with business without fear of danger to his safety, this court finds that the search and seizure of the weapon was reasonable in its inception and scope, and therefore consistent with the protections guaranteed by the Fourth and Fourteenth Amendments.

For reasons stated herein, the judgment of the Court of Appeals is hereby reversed.

*Judgment reversed.*

LEACH, C. J., HERBERT, CELEBREZZE, W. BROWN, SWEENEY and LOCHER, JJ., concur.