The STATE of Ohio, Appellee,

v.

OSBORNE, Appellant.

[Cite as *State v. Osborne* (1989), 63 Ohio App.3d 807.]

Court of Appeals of Ohio,
Sandusky County.

No. S-88-24.

Decided Aug. 18, 1989.

*Ronald J. Mayle*, Assistant Prosecuting Attorney, for appellee.

*Robert G. Hart*, for appellant.

ABOOD, Judge.

This is an appeal from the February 26, 1988 judgment of the Sandusky County Court of Common Pleas denying defendant-appellant Jack W. Osborne's motion to suppress.

Appellant sets forth the following assignment of error:

"The trial court committed prejudicial error by denying appellant's motion to suppress where the appellant was unlawfully detained in violation of Article I, Section 14 of the Ohio Constitution and the Fourth Amendment to the Constitution of the United States and the unlawful detention served as the basis for a search that produced the physical evidence sought to be suppressed."

The undisputed facts giving rise to this appeal are as follows. While on routine patrol at approximately 3:16 a.m. on December 21, 1987, Sergeant John Glass of the Gibsonburg Police Department observed a vehicle parked on County Road 65 with its lights on. He then observed a subject emerge from a wooded area, enter the driver's side of the vehicle and put on the four-way flashers. Upon closer inspection, Sergeant Glass observed that there were two occupants in the vehicle and that the vehicle had Richland County license plates. The sergeant approached the vehicle and asked the driver what he

was doing to which the driver responded that he was taking a nature call. When Sergeant Glass asked for identification, the driver produced a driver's license which identified him as William Nichols. When he leaned over and asked the passenger for identification, Sergeant Glass observed approximately six inches of a black whip antenna sticking out from under the passenger seat of the vehicle. He asked what it was and was handed a sixteen channel program scanner. After he was handed the scanner, Sergeant Glass caught some movement out of the corner of his eye and noticed that there was a third subject, later identified as appellant, lying in the back seat of the car. At this point, he advised Nichols and the passenger who identified himself as James Smith to put their hands where he could see them. He opened up the car door and shined his flashlight in the back seat where he observed appellant lying on his stomach. Although no demands were made of appellant, he stated that he had identification and produced it for the officer. When the officer opened the car door to shine his flashlight inside, he observed two screw drivers lying along the ledge of the driver's seat. Sergeant Glass told the three to remain seated and took the scanner and went back to his cruiser. He then radioed the dispatcher and requested another unit and any information that they could find on the three occupants. After he was advised that there were no wants or warrants on the vehicle, he returned and had all three occupants get out of the car. The sergeant first checked the individuals and then the interior of the passenger compartment of the car for weapons. While he did not find any weapons, underneath the driver's seat he did find a piece of rolled up coat hanger, fashioned in a manner that is commonly used to unlock vehicles. He also found two Ohio maps; one in the front and one in the back seat. Smith and appellant then got back into the car, and Nichols remained outside. Sergeant Glass asked Nichols what they were doing in the area and he stated that they were looking for State Route 18. The sergeant then asked Nichols if he would mind if he looked in his trunk. Nichols replied that he would and Sergeant Glass asked him to have a seat back in the car. Shortly thereafter, Deputy Bocanegra arrived, and they received information from the dispatcher that all three had criminal histories for burglary and two for possession of criminal tools. In addition, Sergeant Glass and Deputy Bocanegra were provided with information from Oak Harbor that the police there were looking for a vehicle from Richland County that they suspected of being used in the breaking into of the Oak Harbor American Legion Post. Deputy Bocanegra asked Nichols if he would mind driving up to the police station in order to get the matter sorted out. Upon arriving at the police station, Sergeant Glass called the prosecutor and advised him of what had happened and of the items retrieved from the vehicle which included the scanner which was programmed to three frequencies commonly used by police departments, the screwdrivers

and the coat hanger. Nichols was again asked for permission to search the trunk of the car but again refused. Thereafter, Sergeant Glass obtained a search warrant from Judge Hunter which he executed at 5:34 a.m., approximately two hours and fifteen minutes from the time of the stop. In searching the trunk, Sergeant Glass found a brown bag containing crowbars, pliers, hammers, a crescent wrench and a twelve pound sledge hammer. He also found a long spud bar and a black calendar book containing several entries such as "City of Port Clinton American Legion, Bingo on Monday, 7:00 p.m., No alarms. Nice club." Included in the entries was one for Gibsonburg which listed the American Legion on South Main Street. After the search warrant was executed, Sergeant Glass called the prosecutor and told him of the items located in the trunk and was advised to place all three subjects under arrest for possession of criminal tools.

On December 30, 1987, appellant, Nichols and Smith were indicted by the Sandusky County Grand Jury on one count of possessing criminal tools in violation of R.C. 2923.24. Before trial, appellant moved to suppress the evidence found in the automobile on the ground that it was obtained as the result of an illegal search and seizure. After a hearing, the court denied appellant's motion. The matter proceeded to trial on June 27, 1988, and on June 29, 1988, the jury returned a verdict of guilty. Appellant was subsequently sentenced to a determinate term of eighteen months in the custody of the Ohio Department of Rehabilitation and Corrections. Appellant then brought this appeal of the trial court's denial of his motion to suppress.

In support of his assignment of error, appellant argues that the trial court erred in concluding that the detention of appellant was permitted by *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, and that the limited search of the passenger compartment was justified by the Supreme Court of Ohio's holding in *State v. Smith* (1978), 56 Ohio St.2d 405, 10 O.O.3d 515, 384 N.E.2d 280. Specifically, appellant argues, first, that the officer's investigation was initiated only by his curiosity rather than specific and articulable facts as required by *Terry, supra,* and, second, that since the officer had no reason to believe that weapons were concealed in the car, he had no reason to make a limited search of the passenger compartment. It must be noted that appellant's motion to suppress did not separately attack the warrant search of the trunk. The motion to suppress and assignment of error go rather only to the manner in which the sergeant obtained the information to get the warrant.

■ As to appellant's first argument, in *Terry, supra,* the court adopted a dual inquiry for evaluating the reasonableness of an investigative stop. Under this approach, one must examine "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the

circumstances which justified the interference in the first place." 392 U.S. at 20, 88 S.Ct. at 1879, 20 L.Ed.2d at 905. The court further stated that "in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 906. The *Terry* court noted that such a stop may be for purposes of crime prevention and detection. The court stated that "it is this interest which underlies the recognition that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." *Id.* at 22, 88 S.Ct. at 1880, 20 L.Ed.2d at 906. In determining whether a stop is proper a court must view that stop in light of the totality of the surrounding circumstances. *State v. Freeman* (1980), 64 Ohio St.2d 291, 18 O.O.3d 472, 414 N.E.2d 1044, paragraph one of the syllabus.

At the hearing on appellant's motion to suppress, Sergeant Glass was asked to describe a typical Sunday night, early Monday morning, in Gibsonburg. He stated that it is generally very quiet with little activity. There is very little vehicular or pedestrian traffic, and there are no gas stations or other businesses open. Because Gibsonburg is a small town (approximately twenty-six hundred people), the officers on patrol are generally familiar with the people, the cars and the activity about the town. Sergeant Glass testified that on this night he thought it was unusual and became somewhat suspicious when he saw an unfamiliar car stopped on the roadway at 3:16 in the morning, first with its headlights illuminated and then with its emergency flashers activated. He stated that he originally approached to inquire if there was a problem or if he could be of assistance. However, when he observed that there were two occupants in the vehicle, that the vehicle had Richland County plates which county is approximately one hundred twenty miles from Gibsonburg, that there was a programmable scanner under the front seat and that a third subject (appellant) was lying on his stomach in the back seat, he felt something was going on and decided to investigate further. He later learned that they all had criminal histories for burglary and that the police in Oak Harbor were looking for a vehicle from Richland County that had broken into their American Legion Post.

Based upon the foregoing, this court agrees with the trial court that as the encounter escalated, it was reasonable for the officer to detain the three occupants for further investigation and that under the circumstances the action taken by the officer was appropriate.

**812**

As to appellant's second contention that the search of the vehicle was not justified, we find that appellant lacks standing to contest the limited search of the passenger compartment. Appellant bears the burden of proving not only that the limited search of the vehicle was illegal, but also that he had a legitimate expectation of privacy in the vehicle. *Rakas v. Illinois* (1978), 439 U.S. 128, 148–149, 99 S.Ct. 421, 432–433, 58 L.Ed.2d 387, 404. Appellant was a passenger in a vehicle owned and operated by one of the co-defendants in this case. He had neither a property nor possessory interest in the vehicle, nor did he assert an interest in the property seized.

Accordingly, appellant's sole assignment of error is found not well taken.

Upon consideration whereof, the judgment of the Sandusky County Court of Common Pleas is affirmed. It is ordered that appellant pay the costs of this appeal.

*Judgment affirmed.*

HANDWORK, P.J., and CONNORS, J., concur.