**State v. Whaley**
*[Cite as 2 AOA 274]*

*Case No. E-89-27*
*Erie County, (6th)*
*Decided April 13, 1990*

*4th Amend U.S. Const.*

*Kevin J. Baxter, Prosecuting Attorney, by Mary Ann Barylski, Counsel for Appellant.*

*John D. Allton, Counsel for Appellee.*

ABOOD, J.

This is an appeal from a decision of the Erie County Court of Common Pleas which granted appellee Dennis Whaley's motion to suppress evidence. Appellant has appealed setting forth the following assignments of error:

"I. *WHEN AN APPELLEE IS LAWFULLY STOPPED FOR A TRAFFIC VIOLATION AND THERE IS AN ARTICULABLE SUSPICION THAT THE VEHICLE HE IS DRIVING IS STOLEN, THE STATE MAY LAWFULLY DETAIN HIM WHILE ITS OFFICERS DILIGENTLY INVESTIGATE THE MATTER.*

"A. AN INVESTIGATIVE DETENTION BASED ON A REASONABLE SUSPICION OF WRONGDOING IS CONSTITUTIONAL.

"B. THE DETENTION OF APPELLEE WAS REASONABLE.

"II. *THE COCAINE FOUND IN APPELLEE'S GARMENT BAG WAS ADMISSIBLE UNDER THE INEVITABLE DISCOVERY DOCTRINE AND THE COURT THEREFORE COMMITTED REVERSIBLE [sic] ERROR IN SUPPRESSING THIS EVIDENCE.*"

The facts giving rise to this appeal are as follows.[1] On March 21, 1988, appellee was stopped on the Ohio Turnpike by Trooper Dietz of the State Highway Patrol for going sixty-six miles per hour in a posted sixty-five miles per hour zone. Appellee was driving a red Corvette with a custom hood and dark tinted windows. While Dietz was asking appellee to produce his driver's license and the car registration he noticed that the serial number on the hood support contained all numbers and no letters which was something he had never before encountered. Dietz then asked appellee if he could see the identification number inside the door. Appellee consented and when Dietz looked there was no number. At this point, Trooper Dietz asked appellee to accompany him to his car so he could ask him a few questions. Dietz asked appellee who owned the car and appellee responded that he had borrowed the car from his friend, Art. When questioned further, appellee

could not give Art's last name, address or place of employment. Dietz then asked appellee to follow him back to the State Highway Patrol Post for further investigation. When they arrived at the station appellee was patted-down for weapons and seated inside while computer checks and telephone calls were made in an attempt to locate the owner of the vehicle. At some time during the following two and one-half to three hours, Trooper Dietz telephone a number that he had found on a for sale sign posted on the car. He reached an individual who would not identify herself, but who said that whoever had the car was authorized to drive it. During this time Dietz also found out that the serial number contained no letters because the car had been rebuilt and issued a new number and title. While this was going on appellee was not allowed to leave the station and at some point was handcuffed to the wall, read his *Miranda* rights and informed that he was being held for investigation. Approximately three hours after the initial stop, with no further progress made in ascertaining the owner of the car, Dietz was advised by the prosecutor to release appellee but to keep the car until the owner was reached. Appellee was informed that the car would be impounded but that he would be released and taken to a service plaza on the turnpike. After appellee made arrangements to be picked up at the service plaza, Dietz and another trooper went to the Corvette to get appellee's belongings. Dietz removed a gray bag from the car, handed it to the other trooper and directed him to check it for any weapons since it would be in the patrol car with appellee. Dietz then continued to look in the car for other belongings and found several .38 caliber rounds on the floor behind the passenger seat. He then heard a commotion and as he got out of the car he saw appellee running across the highway. He later discovered that cocaine had been found in the bag when it was searched by the other trooper.

On March 17, 1989, approximately one year later, appellee was arrested at his residence and on April 11, 1989, he was indicted for knowingly possessing a scheduled two controlled substance in the amount equal to or greater than bulk, approximately 227 grams, in violation of R.C. 2925.03(A)(6).

On April 13, 1989, appellee filed a motion to suppress and to dismiss arguing that the trooper had no probable cause to arrest, stop or detain him on March 21, 1988, that he conducted a warrantless search of the car which was illegally impounded, that he had been illegally detained and deprived of his liberty after his release, that the interrogation was unconstitutional and that they had interfered with his right to counsel and coerced him to make certain statements. Appellee requested that all evidence seized and statements obtained be suppressed.

On May 2, 1989, a hearing was held on the motion to suppress. At the hearing, Trooper Dietz testified to the facts as set forth above. At the conclusion of his testimony, the trial court granted appellee's motion to suppress the evidence. It is from that decision that appellant has brought its appeal.

In its first assignment of error appellant asserts that when an individual is lawfully stopped for a traffic violation and there is an articulable suspicion that the vehicle is stolen, the state may lawfully detain the individual while investigating the matter further. Appellant argues that based upon the totality of the circumstances herein, the investigatory detention was reasonable and not a violation of appellee's constitutional rights. In response, appellee asserts that the investigatory detention herein was actually an arrest without probable cause, that his unwarranted detainment was excessive, and that in light of the fact that there was no report of theft and that the information given to appellant by him was corroborated, the delay was unreasonable.

The issue presented by appellant's first assignment of error is whether the investigatory detention of appellee and the automobile in which he was driving was unreasonable an constituted an unlawful seizure in violation of appellee's fourth amendment rights.

The fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures.[2] Searches and seizures conducted outside of the judicial process, without a warrant, are *per se* unreasonable, subject to several specific established exceptions. See *State* v. *Smith* (1978), 56 Ohio St. 2d 405; *Terry* v. *Ohio* (1968), 392 U.S. 1, 9; *United States* v. *Cortez* (1981), 449 U.S. 411.

In *Terry* v. *Ohio,* and cases thereafter, the United States Supreme Court has said that police may stop and detain persons without probable cause in those limited circumstances in which there are present articulable facts which give rise to a reasonable suspicion that criminal activity is taking place. *United States* v. *Hensley* (1984), 469 U.S. 221, 226; *Dunaway* v. *New York*

(1979), 442 U.S. 200, 207, 211. As applicable to this case, some relevant factors to be considered in determining whether the police conduct exceeded the permissible limits of a *Terry* investigative stop include the length or duration of a particular detention in relationship to the purpose to be served thereby, the time reasonably necessary to effect the specific purpose of the detention and whether an officer was diligent in pursuing the investigation so as to confirm or dispel their suspicions quickly while an individual is being detained. *United States* v. *Sharpe, supra. United States* v. *Place, supra.*

In this case it is not disputed that the initial stop of appellee by Trooper Dietz for a violation of speeding regulations was justified. Futhermore, based upon the totality of the circumstances existing at the time of the stop including Trooper Dietz' observation of the type of serial number on the car, appellee's responses to his questions regarding ownership of the car and his authorization to drive it and Dietz' twelve years of experience in dealing with stolen vehicles, a further limited detention of appellee by Trooper Dietz in order to investigate his suspicions that the vehicle was stolen was justified and reasonable. Under the facts as related by Trooper Dietz and as set forth above, however, everything beyond that, including the removal of appellee from the roadside to the patrol station, the prolonged detention of several hours while Trooper Dietz made repeated requests for information that might confirm his suspicions, the shackling of appellee to the wall and the seizure and subsequent search of the automobile went far beyond the limited "investigatory detentions" permitted by *Terry* and amounted to an arrest and seizure without probable cause.

Upon consideration of the foregoing, this court finds that there is substantial evidence in the record to support the trial court's decision to grant the motion to suppress. Accordingly, appellant's first assignment of error is found not well-taken.

In its second assignment of error appellant asserts that the evidence was admissible under the inevitable discovery doctrine exception to the exclusionary rule since it would have been discovered eventually, without any violation, and the police did not act in bad faith.

For the inevitable discovery exception to the exclusionary rule to apply, the state must demonstrate by a preponderance of the evidence that, even though the evidence sought to be admitted was unlawfully seized, the police did not act in bad faith and the contraband or material seized would have been discovered inevitably by *lawful means. United States* v. *Andrade* (C.A. 9, 1986), 784 F. 2d 1431; *State* v. *Perkins* 18 Ohio St. 3d 193.

Under the circumstances existing herein, there is no lawful means by which the evidence suppressed could have been seized. If Trooper Dietz had proceeded lawfully, the automobile would never have been seized and subsequently searched; rather, appellee would have been subjected to, at most, a brief investigatory stop and then sent on his way. Accordingly, appellant's second assignment of error is found not well-taken.

On consideration whereof, the court finds substantial justice has been done the party complaining and the judgment of the Erie County Court of Common Pleas is affirmed. It is ordered that appellant pay the court costs of this appeal.

*Judgment affirmed.*

GEORGE M. GLASSER, J.
Concurs in Judgment only.

Prior to his death, JUDGE JOHN J. CONNORS, JR., did participate in the decision-making process of this case.

---

[1] The facts set forth below are taken from the testimony of State Trooper Dietz at the hearing on the motion to suppress.

[2] The Fourth Amendment of the United States Constitution provides:

"The right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated, and no warrant shall issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched and the person and things to be seized."