OPINION
Brian T. Foster is appealing from his conviction of carrying a concealed weapon. He pled no contest to the charge after his motion to suppress was overruled by the trial court. The facts of this matter and the rationale of the trial court in overruling the motion to suppress are set forth thoroughly in its decision, as follows:
 This matter is before the Court on Defendant's Motion to Suppress filed herein on December 22, 1998. An oral hearing was conducted on February 23, 1999. Defendant was present, as was his attorney David Landon. The State of Ohio was represented by Assistant Prosecutor Carla Jones. Trooper James Myers of the Ohio State Highway Patrol was present and testified on behalf of the State.
(I)
 Trooper Myers was traveling northbound on Dixie Avenue on his way to pick up his partner when, at approximately 8:44 a.m., he observed a vehicle traveling in the opposite direction. The vehicle stood out to Trooper Myers because the front windshield had numerous cracks, the vehicle's windows were heavily tinted and the driver was not wearing his seatbelt. Trooper Myers decided to initiate a traffic stop for these numerous violations.
 Trooper Myers observed that there was only one person in the vehicle. This individual was later identified as the Defendant herein. While Trooper Myers was in the process of pulling the vehicle over, he observed the driver making numerous movements with his right arm and shoulder toward the right side of the vehicle. This activity continued even after the vehicle had come to a complete stop. Trooper Myers exited his cruiser and attempted to wave the Defendant out of his vehicle. He did this four times before the Defendant responded. The reason for this action was that, for his safety, he does not approached [sic] vehicles with dark tinted windows.
 Finally, the Defendant exited his vehicle and Trooper Myers engaged the Defendant in a conversation in an area located between the two stationary vehicles. Trooper Myers stated that he had some concern for his safety at this point because the Defendant was empty handed after all that activity in the right front seat area. He felt that the Defendant maybe should have had his license, registration or proof of insurance. Trooper Myers proceeded to explain to the Defendant why he had asked for him to exit the car, asked the Defendant for his driver's license and informed him why he had been stopped. The Defendant produced an Ohio driver's license. During this interval, Trooper Myers noticed that the Defendant was very nervous. He stated that the Defendant was shaking, was avoiding eye contact and was not calming down as most individuals do after the initial shock of being pulled over. Furthermore, he noticed a faint odor of alcohol on the Defendant's breath and person.
 Trooper Myers than [sic] asked the Defendant whether he was the owner of the vehicle. The Defendant stated that he was but that he did not have any ownership papers or proof of insurance. Trooper Myers asked the Defendant if he had any firearms in the vehicle or on his person. The Defendant was hesitant to answer, but eventually responded in the negative. Trooper Myers stated that he was not satisfied with the Defendant's answer because of the hesitation and the lack of eye contact by the Defendant while giving his response. Due to his mounting suspicions, Trooper Myers informed the Defendant that he was going to perform a pat-down for his own safety and put the Defendant in his cruiser. The purpose of this was that Trooper Myers wanted to further investigate the ownership of the vehicle and determine if the Defendant was intoxicated.
 The pat-down was performed and the Defendant was placed in the rear of the cruiser. The Defendant was not under arrest at this point. Trooper Myers than [sic] proceeded to the Defendant's vehicle to look for identification numbers and ownership or insurance papers. He observed a crushed can of beer on the floor of the vehicle and decided to do a protective search for weapons while he was searching for identification papers. He opened the glove compartment looking for said papers and saw a black shaving bag. He picked the bag up to move it out of the way when he immediately felt what he believed to be a handgun contained therein. He opened the bag and a [sic] found a loaded gun. He returned to his cruiser, after calling for backup, and informed the Defendant of what he had found. He read the Defendant his Miranda rights and asked the Defendant about the gun. The Defendant orally waived his rights and proceeded to make various statements in which the contents are not important for the purposes of this motion herein.
 Eventually, the Defendant was placed under arrest for carrying a concealed weapon and transported to jail. Meanwhile, Trooper Myers had called for a tow truck and conducted an inventory of the vehicle pursuant to Highway Patrol policy. In the trunk, he found another handgun and some ammunition.
(II)
 In his motion to suppress, the Defendant asks this court to suppress any and all evidence taken from his person, any and all evidence seized from his vehicle, and any and all statements attributed to him. The Defendant contends that the evidence should be suppressed for the following four reasons: 1) it was unreasonable, under the circumstances, for Trooper Myers to believe his life was in danger; 2) to allow the admission of this evidence, which was seized on the basis of furtive gestures alone, would create a dangerous precedent; 3) if the search was legal, Trooper Myers exceeded the boundaries of a permissible search zone; and 4) it is unreasonable, and also creates a dangerous precedent, that a police officer may permissibly search a vehicle based on the argument that a traffic offender, even after being given his freedom, may return to the vehicle to retrieve a weapon to injure the police officer.
 The State asserts that the evidence seized herein should not be suppressed because Trooper Myers was lawfully authorized, under the circumstances, to perform a protective search of the vehicle in the Defendant's immediate reach area for his safety. The State relies on the facts as articulated by Trooper Myers to support their position that his actions were justified.
 The Fourth Amendment to the Constitution of the United States and Section 14, Article I, of the Ohio Constitution prohibit unreasonable searches and seizure of property. These Constitutional mandates require that any evidence obtained by the state in violation of that prohibition must be suppressed from use by the state in its criminal prosecution of the person from whom it was seized.
"Searches and seizures conducted without the authority of a prior judicial warrant are unreasonableper se and therefore illegal." State v. Brown (Nov. 24, 1993), Montgomery App. No. 13958, unreported, quoting, Katz v. United States (1967), 389 U.S. 347.
"The state may nevertheless prove that its warrantless search was not unreasonable, and thus not illegal, if the state demonstrates that its officer[s] acted according to one of the several exceptions to the warrant requirement when the search and seizure was performed. Brown, supra, quoting, Coolidge v. NewHampshire (1971), 403 U.S. 443.
Once a Defendant proves that the search and seizure which took place was warrantless, the burden falls on the state to present evidence sufficient to prove the existence of an exception to the warrant requirement that makes the seizure reasonable. See, Xenia v.Wallace (1988), 37 Ohio St.3d 216. Some of the exceptions are: a search incident to an arrest, probable cause to search a vehicle depending on certain circumstances, such as the officer observing furtive movements, evidence obtained was in plain view, a consensual search, and a search for the officer's safety, such as Terry pat down. See, Coolidge v. NewHampshire (1971), 403 U.S. 443.
The primary issue in the case at bar is whether Trooper Myers was lawfully justified to enter the Defendant's vehicle for the purpose of ascertaining ownership of the vehicle or to conduct a protective search for weapons when his intent was to return the Defendant to the vehicle. After a careful examination of the authority regarding this issue, coupled with the facts as articulated by Trooper Myers, it is this Court's conclusion that Trooper Myers was lawfully justified in entering a searching the vehicle in this instance.
In State v. Holley (Dec. 14, 1989), Montgomery App. No. 11615, unreported, the Court said:
 "We conclude that even when making a routine traffic stop, a police officer's concerns about his safety are legitimate, and entitle him not only to make a Terry pat-down search of the person being stopped, but also to make a search of that interior of the car that would be readily accessible to the person being stopped upon his return to the car * * *"
 Id. See, Michigan v. Long (1983), 463 U.S. 1032; Statev. Bobo (1988), 37 Ohio St.3d 177. But before a protective search will be permitted, specific facts have to be articulated by the officer which would justify his concerns for his safety. Terry v. Ohio (1968),392 U.S. 1.
 Under the Terry analysis, the standard of review as to whether an officer's actions were justified is to be the "totality of the circumstances." The totality of the circumstances are "* * * to be viewed from the eyes of the reasonable and prudent police officer on the scene who must react to the events as they unfold." State v. Andrews (1991), 57 Ohio St.3d 86.
 In the case at bar, the Defendant asserts that Trooper Myers based the protective search of the vehicle solely on the fact that the Defendant made some furtive gestures and that furtive gestures, standing alone, cannot justify the search. This Court agrees with the Defendant's legal proposition, See, State v. Bobo
(1988), 37 Ohio St.3d 177, but cannot agree with his assessment of the facts and circumstances. Trooper Myers stated that he was initially concerned with his safety due to the movements of the Defendant as he was being pulled over. However, he was not intent on searching the vehicle until after he had determined that the Defendant could produce no ownership or insurance papers, was unusually nervous, smelled of alcohol, and avoided eye contact when asked important questions, such as if he had any weapons in the car.
 From the totality of circumstances, Trooper Myers was justified in performing a pat-down of the Defendant for weapons and placing him in the back of his cruiser. The purpose of these actions were Trooper Myer's legitimate concerns for his safety and the fact that he wanted to make sure the vehicle was not stolen. At this point, Trooper Myers could have entered the cruiser and talked with the Defendant, instead, still concerned for his safety, he decided to perform a protective search of the vehicle. The reason for doing this was that he had planned to return the Defendant to his vehicle after writing the citations and he wanted to make sure that the Defendant would not have access to a weapon.
 The Supreme Court of the United States, in Michigan v. Long (1983), 463 U.S. 1032, stated that this type of search is permissible as long as the officer's concerns are justified and reasonable. In the case at bar, Trooper Myers articulated specific facts which reasonably led to his concerns. Therefore, the search was justified. Furthermore, the search of the glove compartment was justified and did not exceed the boundaries of a permissible search zone because the search is allowable in any areas from which the Defendant might gain immediate control of a weapon. See, Michigan v. Long, supra. The glove compartment is certainly one of these areas. See, State v. Holley
(Dec. 14, 1989), Montgomery App. No. 11615, unreported.
 The Defendant argues that this Court should follow the precedent as set forth in Knowles v. Iowa (1998), 119 S.Ct. 484. In Knowles, the Supreme Court held that an Iowa statute that permitted police officers almost unlimited authority to search a traffic offender's vehicle was unconstitutional. Id. This Court agrees with the Supreme Court as to the obvious injustice a statute such as Iowa's would cause. However, the case at bar presents a significantly narrower issue. The statute in Knowles allowed the officers to not only order the passengers out of a vehicle and to pat them down, it allowed them to conduct a full field-type search, such as done when a person has been arrested. Id. at 487. The court did not reverse its prior position that a protective search of a vehicle is permissible when the concerns for the officer's safety are reasonable in light of the circumstances, as long as the search is limited to the Defendant's immediate reach area. Therefore, it is this Court's conclusion that Knowles is inapplicable to the present case.
 Any evidence recovered from the trunk should also not be suppressed as fruits of the poisonous tree due to the fact that the Defendant's arrest was legal. Trooper Myers was following acceptable procedure by performing an inventory of the vehicle before it was towed to a safe location after the arrest and detention of its only occupant. Finally, any statements attributed to the Defendant are admissible because the evidence that Trooper Myers read the Defendant his rights and he subsequently waived those rights was not contradicted or challenged.
(III)
 This Court finds that the State has shown by a preponderance of the evidence that the search of the Defendant's vehicle was within the bounds of the Constitutional requirements. Furthermore, the search of the trunk and the statements obtained as a result of a legal arrest are not fruits of the poisonous tree. Accordingly, the Defendant's motion to suppress is hereby OVERRULED.
Docket 9.
On appeal, Foster, represented by counsel, presents no assignments of errors as such, but rather frames his argument as "questions presented for review," to-wit:
 1. Whether, under Terry v. Ohio, Patrolman Myers conducted an unlawful search of Mr. Foster's vehicle, when he conducted such search for a purpose other than to discover weapons?
 2. Whether, under U.S. v. Sharpe, the evidence flowing from the search was inadmissible because Patrolman Myers unlawfully and unreasonably prolonged the detention of Mr. Foster?
We have conducted a de novo review of the record, including the transcript of the suppression hearing, and find that it amply supports the decision of the trial court. Trooper Myers provided reasonable and articulable grounds for his safety concerns, and he was justified in opening the bag he found in the glove compartment because the handgun inside it was immediately apparent to him. A search of an area in a vehicle where the driver has been seen to appear to have concealed something is reasonable for the purpose of the officer's protection. State v. Smith (1978), 56 Ohio St.2d 405, 10 O.O.3d 515. This court itself has stated that all doubts in such a situation should be resolved in favor of the officer who stops a suspicious driver whether during early morning hours or at anytime. See State v. Mitman (Sept. 23, 1994), Montgomery App. No. 14214, unreported. Thus, we answer the first question presented by Foster in the negative.
As to Foster's second question, the State contends that Foster did not raise this issue to the trial court. We have reviewed the record, as we stated before, and find that the State is correct. It is accepted appellate practice not to address issues that were not presented to the trial court, but, nevertheless, we find no evidence in the record that would support a finding that Officer Meyers unreasonably and unlawfully prolonged Foster's detention. We therefore also answer the second question in the negative.
The judgment is affirmed.
GRADY, P.J. and BROGAN, J., concur.
Copies mailed to:
Johnna M. Shia
David H. Landon
HON. JAMES J. GILVARY
HON. MICHAEL T. HALL