OPINION
{¶ 1} The State of Ohio ("appellant") appeals the August 22, 2002 judgment entry of the Ashtabula County Court of Common Pleas granting Amy Stiles' ("appellee") motion to suppress. For the reasons set forth below, we affirm the decision of the trial court in this matter.
 {¶ 2} Appellee was arrested and charged with possession of cocaine in violation of R.C. 2925.11(A) on September 29, 2001. On May 17, 2002, appellee filed a motion to suppress all evidence obtained as a result of the original stop and search. A suppression hearing was conducted on August 15, 2002. After hearing and weighing all the evidence presented, the trial court made the following factual determinations:
 {¶ 3} On September 29, 2001, while on patrol in Ashtabula, Officer Taylor Cleveland ("Cleveland") observed a green 4-door Bonneville ("vehicle") parked in front of a driveway on West 40th Street in violation of a city ordinance. The location is an area of high crime and high drug activity. Cleveland further observed two occupants in the vehicle, appellee behind the wheel and a male, later identified as Nathaniel Clark ("Clark"), in the passenger seat. Cleveland turned his patrol car around and pulled behind the vehicle. He then noticed that the vehicle was parked more than 12 inches from the curb in violation of another city ordinance. Observing the two parking violations, Cleveland approached the vehicle.
 {¶ 4} As Cleveland approached the vehicle, he noticed the passenger ducking down and engaging in some activity in the front seat. Cleveland also recognized the vehicle as a car that had been involved in a stolen vehicle report a couple of months earlier. Concerned for his own safety, Cleveland approached the passenger side of the vehicle. At this time, Cleveland recognized the passenger as Clark from whom Cleveland previously bought drugs in controlled purchases. Cleveland initiated contact with Clark and inquired about the ownership of the vehicle.
 {¶ 5} Clark claimed that he had recently purchased the vehicle from Dan Swan ("Swan"), the titled owner, but was unable to produce any proof of ownership. Clark did provide Cleveland with Swan's phone number to verify Clark's purchase of the vehicle. Cleveland removed Clark from the vehicle and conducted a pat down search prior to placing Clark in the patrol car, while waiting for the police dispatcher to verify Clark's lawful possession of the vehicle.
 {¶ 6} While waiting for the verification, appellee exited the driver's side of the vehicle and began to walk toward a residence on West 40th Street. Cleveland ordered appellee to return to the vehicle. Initially, appellee refused to do so. Appellee, however, complied with Cleveland's second instruction to return to the vehicle. Because of concerns for his safety, Cleveland instructed appellee to lift her blouse to check her waistband for weapons. Cleveland ordered appellee to lift her blouse rather than conduct a frisk to avoid any physical contact with appellee so as to avoid any hint of impropriety.
 {¶ 7} Upon lifting her blouse and exposing her waistband, Cleveland observed the tip of a plastic bag. Based on his experience, Cleveland was aware that drugs were often transported and packaged in plastic bags. Cleveland, therefore, removed the plastic bag from appellee's waistband and observed what appeared to be crack cocaine. As a result of this discovery, Cleveland placed appellee under arrest for possession of cocaine. After arresting appellee, dispatch informed Cleveland that Clark was in lawful possession of the vehicle and, therefore, Clark was released from custody.
 {¶ 8} On August 22, 2002, the trial court granted appellee's motion to suppress. Appellant timely filed an appeal and asserts the following assignment of error:
 {¶ 9} "The trial court erred when it granted appellee's motion to suppress evidence."
 {¶ 10} Appellant argues that the "trial court failed to evaluate this traffic stop in light of the totality of the circumstances * * *."
 {¶ 11} The trial court acts as trier of fact at a suppression hearing and must weigh the evidence and judge the credibility of the witnesses. State v. Hill, 75 Ohio St.3d 195, 208, 1996-Ohio-222. Because the trial court is in the best position to resolve the factual issues, see State v. Mills (1992), 62 Ohio St.3d 357, 366, an appellate court is bound to accept the trial court's factual determinations as long as they are supported by competent and credible evidence. State v. Searls
(1997), 118 Ohio App.3d 739, 741. Once the appellate court accepts the trial court's factual determinations, the appellate court conducts a de novo review of the trial court's application of the law to these facts. Id.
 {¶ 12} A review of the suppression hearing transcript reveals that the trial court's factual findings are supported by competent and credible evidence. Moreover, neither appellant nor appellee question the trial court's factual determinations. Since the trial court's factual determinations are supported by competent and credible evidence, we must accept these factual findings as accurate, and now must "independently determine as a matter of law whether the applicable legal standard has been satisfied." See State v. Burrows, 11th Dist. No. 2000-T-0089,2002-Ohio-1961, 2002 Ohio App. LEXIS 1918, at *8, citing State v.Rutherford (1994), 93 Ohio App.3d 586, 592.
 {¶ 13} Because the trial court found that no issue had been raised as to the legality of the initial stop, the only issue is whether Cleveland's protective search of appellee was constitutional.
 {¶ 14} The Fourth Amendment provides that "[t]he right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * *." The Fourth Amendment is enforceable against the states through the Due Process Clause of the Fourteenth Amendment. Mapp v. Ohio (1961),367 U.S. 643, 655. Reasonableness relies "on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." United States v. Brignoni-Ponce
(1975), 422 U.S. 873, 878.
 {¶ 15} Warrantless searches are per se unreasonable unless the search falls within a noted exception. Katz v. United States (1967),389 U.S. 347, 357. One such exception was articulated in Terry v. Ohio
(1968), 392 U.S. 1. Pursuant to Terry, an officer has the authority to frisk a person who was legally stopped if the officer "has reason to believe that he is dealing with an armed and dangerous individual." Id. at 27. "[T]he standard to perform a protective search * * * is an objective one based on the totality of the circumstances" State v.Andrews (1991), 57 Ohio St.3d 86, 89, citing Terry, 392 U.S. at 27. The officer, in forming his or her belief, is entitled to draw reasonable inferences from the facts in light of his or her experience. Terry,392 U.S. at 27. In essence, "the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Id.
 {¶ 16} Because officer safety is a very legitimate concern, Statev. Lozada, 92 Ohio St.3d 74, 79, 2001-Ohio-149, citing Pennsylvania v.Mimms (1977), 434 U.S. 106, 111, officers may take those steps reasonably necessary to protect their personal safety, including a protective search. United States v. Hensley (1985), 469 U.S. 221, 235; see, also,State v. Smith (1978), 56 Ohio St.2d 405, 409 ("The law does not require that an officer wait until the point of peril to take protective action."). Officers are not, however, entitled to conduct or continue a protective search as a pretext for a search for contraband. State v.Evans, 67 Ohio St.3d 405, 414, 1993-Ohio-186; see, also, Minnesota v.Dickerson (1993), 508 U.S. 366, 378 (continuing a search after concluding that no weapons are present removes the search from the Terry
exception). Further, an officer is not permitted to conduct a search merely for convenience, nor may an officer conduct a search as part of his or her normal routine or practice. Lozada, 92 Ohio St.3d at 77.
 {¶ 17} In determining the reasonableness of the officer's belief, courts examine the totality of the circumstances, including the following factors: (1) whether the location of the contact is an area of high crime or high drug activity, see Adams v. Williams (1972), 407 U.S. 143, 147;State v. Bobo (1988), 37 Ohio St.3d 177, 179; (2) the suspect's non-compliance with the officer's orders, see Adams, 407 U.S. at 148; (3) the time of the occurrence, see id.; Andrews, 57 Ohio St.3d at 88; Bobo,37 Ohio St.3d at 179; (4) the officer's experience, Andrews,57 Ohio St.3d at 88; Bobo, 37 Ohio St.3d at 179; (5) the lack of backup for the officer, Andrews, 57 Ohio St.3d at 88; (6) the contact's location away from the police cruiser, Andrews, 57 Ohio St.3d at 88; Bobo,37 Ohio St.3d at 179; (7) whether the suspect is fleeing the officer or the scene, Andrews, 57 Ohio St.3d at 88; Smith, 56 Ohio St.2d at 409; (8) any furtive movements by the suspect, Bobo, 37 Ohio St.3d at 179; Smith,56 Ohio St.2d at 409; (9) the precautionary measures taken by the officer, id.; and (10) the suspected offense. Evans, 67 Ohio St.3d at 413.
 {¶ 18} In his testimony, Cleveland specifically indicated that Clark's furtive movements and appellee's actions in leaving the scene raised Cleveland's suspicions that appellee was armed. This court, however, will also consider all other facts that Cleveland was aware of at the time of the occurrence in determining whether his search was reasonable. See id. at 413 (a protective search is not deemed unconstitutional simply because the officer fails to articulate the justification for his or her belief at the suppression hearing "so long as it is clear that he [or she] was aware of specific facts which would warrant a reasonable person to believe he was in danger.").
 {¶ 19} When Cleveland initially approached the vehicle, he observed Clark making furtive movements. The furtive movements of one occupant of a vehicle, however, cannot give rise to a reasonable belief that another occupant is armed. See State v. Isbele (2001),144 Ohio App.3d 780, 785 (the actions and subsequent suspicions pertaining to one occupant in a vehicle, without more, do not give rise to a reasonable cause to search another occupant of that vehicle). Thus, in determining whether Cleveland had a reasonable belief that appellee was armed, this court will not consider the furtive movements of Clark.
 {¶ 20} Cleveland, obviously, was also aware of appellee's attempt to leave the scene and appellee's failure to heed Cleveland's first order to return to the vehicle. A detainee that leaves or attempts to leave a scene or a detainee that does not comply with an officer's orders may raise a suspicion in the mind of the officer. See Smith,56 Ohio St.2d at 409; Adams, 407 U.S. at 147. In this case, however, appellee's actions did not raise a reasonable suspicion that she was armed. Cleveland testified that he "didn't want [appellee] to go into the house and retrieve a weapon and come back." Cleveland's testimony clearly indicates that he did not believe appellee was armed at the moment he addressed her. Rather, his testimony reveals that Cleveland was concerned with appellee leaving the scene to obtain a weapon and then returning armed.
 {¶ 21} Moreover, because Cleveland failed to inform appellee of the illegal parking at the time Cleveland approached the vehicle, appellee was never put on notice that she was suspected of any criminal activity. Combined with the actions of Cleveland in removing and questioning Clark without addressing appellee, it was reasonable for appellee to conclude that Clark, rather than appellee, was the focus of the Cleveland's investigation. Appellee's actions in exiting the vehicle and walking towards the residence, without more, could not raise a reasonable belief that appellee was armed.
 {¶ 22} Cleveland was also aware that the vehicle had been reported stolen at least two months prior. Cleveland testified, however, that his concerns about the status of the vehicle were not extensive because the name Clark provided to Cleveland was that of the titled owner. Cleveland, therefore, "thought to [him]self that * * * if somebody * * * knew the name [of] the owner of the car that there was a possibility that it might not be stolen."
 {¶ 23} Cleveland also knew that the location was an area of high crime and high drug activity. Although this may be one relevant fact in determining an officer's reasonable belief, Bobo, 37 Ohio St.3d at 179, it, alone, is not sufficient to establish such a belief. Brown v. Texas
(1979), 443 U.S. 47, 52.
 {¶ 24} Cleveland testified that he searched appellee "as an officer safety issue." Cleveland, however, took no precautionary measures as to appellee while he addressed Clark. As it was, Cleveland felt secure enough to approach Clark, remove him from the vehicle, address Clark about the ownership of the vehicle, frisk him, place him in the police cruiser, and radio dispatch with the information that Clark provided. All the while, having little, if no, contact with appellee. If Cleveland's belief that appellee was armed was reasonable, logically he would take some steps to ensure his safety with respect to appellee while addressing Clark.
 {¶ 25} Evaluating the totality of the circumstances, a reasonably prudent person in these circumstances would not be warranted in believing that he or she was in danger. Cleveland's testimony and his actions on the scene indicate that his belief that appellee was armed is not reasonable under these circumstances. Moreover, Cleveland's testimony implies that this protective search was more the result of his normal practice or routine, rather than based on a reasonable belief that appellee was armed.
 {¶ 26} While aggressive drug enforcement is an important part of a police officer's work, such enforcement must stay within constitutional bounds. Just because a hunch or an unparticularized suspicion turns out to be correct and the subsequent search reveals a weapon or contraband, a protective search must still be supported by an officer's reasonable suspicion that the detainee is armed or has contraband to be constitutional. Terry, 392 U.S. at 27. "[T]he Constitution sometimes insulates the criminality of a few in order to protect the privacy of us all." Arizona v. Hicks (1987), 480 U.S. 321, 329. Since the evidence demonstrates that Cleveland did not possess a reasonable belief that appellee was armed, the protective search conducted on appellee was unconstitutional.
 {¶ 27} For the foregoing reasons, we conclude that Cleveland's protective search of appellee was not supported by a reasonable belief that she was armed. Thus, we hold that appellant's sole assignment of error is without merit. The decision of the Ashtabula County Court of Common Pleas granting the motion to suppress is, therefore, affirmed.
DONALD R. FORD, P.J., and WILLIAM M. O'NEILL, J., concur.