DECISION.
{¶ 1} When a police officer had seen a gunman fire shots and disappear, and he then later observed a man in the same general area, with open containers of beer, spent shell casings scattered about him, and a bag of marijuana — would a prudent officer pat down the gentleman for weapons? You betcha.
 {¶ 2} Defendant-appellant Curtis Thompson was indicted for carrying a concealed weapon and possessing a weapon under a disability. Thompson moved to suppress the evidence against him, and after a hearing, the trial court overruled Thompson's motion. Thompson then pleaded no contest to both counts of the indictment and was given concurrent sentences of one year for carrying a concealed weapon and two years for possessing a weapon under a disability. Thompson now challenges the trial court's decision overruling his suppression motion. But because the arresting officer had a reasonable and articulable suspicion that Thompson was armed, the frisk at issue was constitutional. Consequently, the "fruits" of the frisk were admissible, and the trial court properly overruled Thompson's motion. We affirm the trial court's judgment.
 I. Shots, Shells, and a Bag of Marijuana {¶ 3} On New Year's Eve, Officer Chris Bundren and his partner were awaiting a tow truck in Lockland, Ohio. The usual silence of the night had been continually disturbed by the sounds of gunshots and fireworks in and around the area. Evidently, on the west side of Lockland, it was common practice for citizens to fire weapons, rather than fireworks, into the air on New Year's Eve.
 {¶ 4} As the officers waited for the tow truck, Bundren was looking at the apartment buildings across the street when he saw an unidentified individual firing rounds into the air. After firing the shots, the gunman retreated to the back of the apartment building. Bundren chose not to respond immediately because he did not want to abandon his partner.
 {¶ 5} Once the tow truck had arrived, Bundren and another officer crossed the street in an attempt to ascertain the gunman's identity. As they approached the rear of the apartment complex, the officers spotted Thompson and another individual sitting on an electrical box. From afar, Bundren noticed approximately eight to ten open containers of Miller High Life scattered about the men. He also saw a bag of marijuana and spent shell casings sitting on the electrical box between the men. The officers frisked the men for weapons and found guns on both Thompson and his colleague.
 {¶ 6} The relevant inquiry is whether the officers had a reasonable suspicion to frisk Thompson. Bundren had seen a gunman fire shots and disappear, and he then later observed Thompson in the same general area, with open containers of beer, spent shell casings, and marijuana. We think a prudent officer would pat down the gentleman for weapons.
 {¶ 7} At a suppression hearing, the credibility of the witnesses is an issue for the trier of fact.[1] Accepting the properly supported findings of the trier of fact as true, an appellate court must determine as a matter of law, without deference to the trial court's conclusion, whether the trial court erred in applying the substantive law to the facts of the case.[2]
 II. The Protective Search {¶ 8} The Fourth and Fourteenth Amendments to the United States Constitution prohibit warrantless searches and seizures. Unless an exception applies, warrantless searches are per se
unreasonable.[3] One exception has been enunciated by the United States Supreme Court in Terry v. Ohio, where the Court balanced the right to be free from unreasonable searches against the need to protect the police and the public.[4] UnderTerry, a police officer may frisk a detainee's outer clothing for concealed weapons when the officer has a reasonable suspicion that the suspect is armed and dangerous. An officer need not be certain that a detainee is armed, but the officer's suspicions about the presence of a weapon must be reasonably aroused to conduct this protective search.[5] The burden of proving the constitutionality of a Terry frisk is on the prosecution.[6]
 {¶ 9} As the Ohio Supreme Court has observed, when making a reasonableness assessment, police officers may consider the totality of the circumstances: "Where a police officer, during an investigative stop, has a reasonable suspicion that an individual is armed based on the totality of the circumstances, the officer may initiate a protective search for the safety of himself and others."[7] The standard is an objective one based on the particular circumstances — an officer's unreasonable subjective belief will taint the "fruits" of a protective search.[8]
 {¶ 10} Thompson argues that the officers did not have sufficient indicia of criminal activity or sufficient reason to fear for their safety to justify a protective search. Thompson argues that the area was not a high-crime area, that the arresting officer was relatively young and inexperienced (Bundren at the time had only two years' experience), and that there were no furtive or otherwise unusual gestures noted in Thompson's behavior.
 {¶ 11} When reviewing the constitutional propriety of a protective search, a court may, among other factors, consider (1) the surrounding area; (2) the cover of night — where weapons can easily be hidden; (3) the arresting officer's experience, knowledge, and observations; and (4) the officer's proximity to protective cover when making the frisk.[9] The very nexus between drugs and guns can create a reasonable suspicion of danger to the officer.[10] When investigating drug activity, officers have a legitimate concern for their own safety, and that concern can justify a pat-down search for weapons.[11]
 {¶ 12} In the case before us, Bundren had a reasonable, articulable suspicion that Thompson might be armed. Bundren had earlier observed an individual firing a weapon. When Bundren investigated the gunshots, it was nighttime, and weapons could easily be concealed or hidden.[12] Throughout the evening, Bundren had heard multiple gunshots. The facts further showed that, as Bundren approached Thompson, he saw open containers of alcohol, a bag of marijuana, and spent shell casings. Possession of marijuana is a criminal offense.[13] Although Thompson did not attempt to flee or to make any furtive gestures, the shell casings combined with the bag of marijuana convinces us that Bundren had a reasonable suspicion that Thompson and his cohort were armed and dangerous. And we also note that the frequency of gunshots in the area further supported a finding of reasonableness, particularly so when the safety of the public was a legitimate consideration.
 {¶ 13} For all of the foregoing reasons, Thompson's assignment of error is not well taken. Accordingly, we affirm the trial court's judgment.
Judgment affirmed.
Doan, P.J., and Gorman, J., concur.
[1] See State v. Mills (1992), 62 Ohio St.3d 357,582 N.E.2d 972; State v. Fanning (1982), 1 Ohio St.3d 19, 437 N.E.2d 583.
[2] See State v. Klein (1991), 73 Ohio App.3d 486,597 N.E.2d 1141.
[3] Katz v. United States (1967), 389 U.S. 347, 357,88 S.Ct. 507; State v. Hines (1993), 92 Ohio App.3d 163,634 N.E.2d 654.
[4] See Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868.
[5] See State v. Smith (1978), 56 Ohio St.2d 405, 407,384 N.E.2d 280; Hines, supra.
[6] See State v. Pearson (1996), 114 Ohio App.3d 168,682 N.E.2d 1086; State v. Hunter (1994), 98 Ohio App.3d 632,649 N.E.2d 289.
[7] State v. Bobo (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, paragraph two of the syllabus.
[8] See, generally, State v. Andrews (1991),57 Ohio St.3d 86, 565 N.E.2d 1271.
[9] See Bobo, supra.
[10] See State v. Hunter, 2nd Dist. No. 20917,2006-Ohio-2678, at ¶ 11, quoting United States v. Sakyi (C.A.4, 1998), 160 F.3d 164, 169.
[11] State v. Martin, 2nd Dist. No. 20270,2004-Ohio-2738.
[12] See State v. Freeman (1980), 64 Ohio St.2d 291,414 N.E.2d 1044.
[13] See R.C. 2925.11.