OPINION
{¶ 1} The State of Ohio appeals from an order of the Montgomery County Court of Common Pleas, which granted Michael Vineyard's motion to suppress evidence. For the following reasons, the order will be affirmed.
 {¶ 2} The evidence presented at the suppression hearing revealed the *Page 2 
following facts.
 {¶ 3} At approximately 2:07 p.m. on March 11, 2007, Dayton Police Officer James Mullins received a call over his police radio from Officer Huey that a black Dodge Magnum was parked in front of an apartment building on the 100 block of Cambridge Avenue and that it was blocking the middle of the street. Mullins proceeded to that area and observed a black Chrysler Pacifica approaching the stop sign at Cambridge Avenue and Bryn Mawr Avenue. Mullins observed that this vehicle had very dark tinted windows, and he initiated a traffic stop. Mullins also believed that this was the vehicle that had been blocking traffic.
 {¶ 4} The Pacifica pulled over in the 300 block of Cambridge Avenue. Before Mullins approached the vehicle, he ran the license plate through the Law Enforcement Automated Data System and learned that the owner was Dion Ross, who had been arrested in 2006 for carrying a concealed weapon. Mullins then approached the vehicle from the driver's side, identified himself to the driver, and indicated why he had made the stop. Mullins asked the driver to provide his driver's license. Vineyard, who was driving the vehicle, provided his license. There were no passengers.
 {¶ 5} Mullins immediately recognized Vineyard's name from his experience in the drug unit. He testified that he had seen Vineyard's name in connection with complaints to the Dayton Police Department drug hotline, on a search warrant which resulted in the recovery of weapons and guns, and from reports that Vineyard had been arrested for possession of drugs. Mullins decided at that time to search the lunge area of the car for weapons.
 {¶ 6} Mullins immediately had Vineyard step from the car. The officer *Page 3 
conducted a patdown search and placed Vineyard in his cruiser. Mullins asked Officer Creigee Coleman, who had come to the scene, to search the vehicle for weapons. Officer Huey prepared a citation for the tinted window violation, and Mullins signed the citation. Upon conducting the search of the vehicle, Coleman found a handgun in the unlocked glove compartment and a magazine with ten bullets in the center console area.
 {¶ 7} On April 4, 2007, Vineyard was indicted with one count of carrying a concealed weapon, in violation of R.C. 2923.12(A)(2). On May 7, 2007, Vineyard filed a motion to suppress, arguing that the officers lacked a reasonable, articulable suspicion that he was armed and dangerous. On June 28, 2007, the court conducted a hearing on the motion to suppress, during which Mullins, Coleman, and Ross testified. The court granted the motion to suppress on July 9, 2007.
 {¶ 8} The state appeals from the suppression of the state's evidence, raising one assignment of error.
 {¶ 9} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT CONCLUDED THAT THE POLICE OFFICER'S PROTECTIVE SEARCH OF THE PASSENGER COMPARTMENT OF VINEYARD'S VEHICLE WAS NOT BASED ON A REASONABLE AND ARTICULABLE SUSPICION THAT VINEYARD WAS POTENTIALLY ARMED AND DANGEROUS; THUS CAPABLE OF GAINING CONTROL OF A WEAPON INSIDE THE VEHICLE WHEN ALLOWED TO RETURN TO IT."
 {¶ 10} In its sole assignment of error, the state claims that the officers had a reasonable and articulable suspicion to believe that Vineyard was armed and *Page 4 
dangerous and that he might gain control of a weapon inside the vehicle upon returning to it.
 {¶ 11} In reviewing the trial court's ruling on a motion to suppress evidence, this court must accept the findings of fact made by the trial court if they are supported by competent, credible evidence. SeeState v. Morgan, Montgomery App. No. 18985, 2002-Ohio-268. "But the reviewing court must independently determine, as a matter of law, whether the facts meet the appropriate legal standard." Id.
 {¶ 12} The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. Terry v. Ohio
(1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. "A police officer may lawfully stop a vehicle if he has a reasonable articulable suspicion that the motorist has engaged in criminal activity[,] including a minor traffic violation." State v. Buckner, Montgomery App. No. 21892,2007-Ohio-4329, ¶ 8. Once a lawful stop has been made, the police may require the driver and any passengers to exit the vehicle pending completion of the traffic stop. Pennsylvania v. Mimms (1977),434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331; Maryland v. Wilson (1997),519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41.
 {¶ 13} "Authority to conduct a patdown search for weapons does not automatically flow from a lawful stop[.]" State v. Stewart, Montgomery App. No. 19961, 2004-Ohio-1319, ¶ 16. The police may conduct a limited protective search for concealed weapons if the officers reasonably believe that the suspect may be armed or a danger to the officers or to others. Molette at ¶ 13. Similarly, the police may search the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, if the officers possess a reasonable belief that the *Page 5 
suspect is dangerous and may gain immediate control of weapons located in the vehicle upon returning to it. Michigan v. Long (1983),463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201; State v. Roye (June 22, 2001), Greene App. No. 2001-CA-5.
 {¶ 14} To justify a patdown search or the search of a passenger compartment, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, 392 U.S. at 21. However, "[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Id. at 27; State v. Smith (1978),56 Ohio St.2d 405, 407, 384 N.E.2d 280.
 {¶ 15} Here, Mullins observed that the Pacifica had very dark tinted windows. Mullins thus had probable cause to stop the vehicle for a traffic violation. Dayton v. Erickson (1996), 76 Ohio St.3d 3,665 N.E.2d 1091. Upon stopping the Pacifica, Mullins was also entitled to ask Vineyard to exit the vehicle and to sit in his cruiser while he prepared a citation.
 {¶ 16} At issue then is whether Mullins had a reasonable and articulable suspicion that Vineyard was dangerous and might access a weapon upon returning to the vehicle such that the officers could search the passenger compartment of the vehicle. The trial court concluded that the search of the passenger compartment was unlawful, reasoning, in part:
 {¶ 17} "The only circumstance to suggest a possible danger is that Vineyard was rumored to be involved in illegal drug transactions. Vineyard was not arrested or charged as a result of the execution of the search warrant that the officer referred to. *Page 6 
He was not arrested or charged with illegal drug offenses as a result of the anonymous drug hotline tips.
 {¶ 18} "The officer might have been fearful initially but he soon found out that the man who had the weapons conviction and apparently owned this car wasn't the driver. The timing is important here and the search of the lunge area didn't occur until after the defendant was removed from the car, ID'd, patted down, and placed in the back of the cruiser. A pat-down did not reveal any firearms or cocaine or marijuana.
 {¶ 19} "It is apparently argued here that the reasonable and articulable suspicion of danger is that defendant had just been in the 100 block of Cambridge Avenue with the vehicle stopped in the street. A general assertion is made that many arrests for drug transactions have occurred in the 100 block of Cambridge. So apparently the theory is that the defendant had made a drug transaction at 2:00 in the afternoon in the middle of the street on Cambridge Avenue.
 {¶ 20} "Further, drug traffickers are known to carry firearms. So inferentially the opinion of the officer would be that defendant having just completed a drug sale was armed and the officer coming upon him a block or two away would be in danger.
 {¶ 21} "This is not an entirely unreasonable theory, but it lacks sufficient indicia here. There is not enough evidence to suggest a transaction in drugs actually occurred in the 100 block on this date at this time. It is reasonable to make an inference from circumstance, but the likelihood of accuracy is greatly diminished when inferences are being made on inference. Here there is no evidence that a transaction actually occurred other than the setting and what had occurred on some occasions in the past. The possible reasonable and articulable suspicion is further diminished by *Page 7 
this defendant's behavior upon contact with the officer. This defendant doesn't attempt to flee, there are no furtive gestures, there is no erratic behavior. Identification is provided and defendant fully complies. This is different than Howard and Vela. The officer finds out that the operator of the vehicle is not someone who has a firearm's violation. The existence of drugs on the person is not present. The officer doesn't have specific knowledge of a prior conviction of this defendant for illegal drug dealing. The evidence is simply lacking. This is a hunch, perhaps a valid hunch, but it is a hunch. There is not reasonable articulable suspicion of the existence of a firearm which would pose danger to the officers. Somewhat important additionally is the fact that when the search occurred there were two officers from separate cruisers present."
 {¶ 22} The state asserts that the trial court "examined each fact in a vacuum, not considering the totality of the circumstances that contributed to the reasonable suspicion that Vineyard was potentially armed and dangerous." The state argues that several facts must be considered together. First, Vineyard was pulled over in a vehicle owned by an individual who had been arrested for carrying a concealed weapon. Second, Mullins testified that he had previously been assigned to work the area in which Cambridge is located and that he had made between ten and twelve drug-related and gun-related arrests in the 100 block. Mullins stated that, "[i]f you expand that two or three blocks, you can take that number up to 20 to 25 arrests for drugs and weapons." Third, Mullins was aware from his work with the drug unit that Vineyard's name had appeared on several drug complaints and on a search warrant. Fourth, drugs and weapons are frequently found in close proximity. Fifth, Vineyard was stopped in a high crime area. Finally, the Pacifica had dark tinted windows, and the *Page 8 
officers would not have been able to see into the vehicle once Vineyard returned to it.
 {¶ 23} Although the facts emphasized by the state could create an inference that Vineyard was armed and dangerous, we find no fault with the trial court's conclusion that these facts were tempered by additional factors and that, as a whole, there was only a weak inference that Vineyard was dangerous. As noted by the trial court, there is little evidence that Vineyard was engaged in drug transactions in the 100 block of Cambridge Avenue. As stated by Mullins, Officer Huey reported that a Dodge Magnum was blocking traffic and that there were people around the car, not that individuals in a Pacifica were engaged in drug transactions. Moreover, Mullins testified on cross-examination that Vineyard stopped promptly when he activated his lights, that Vineyard provided a valid driver's license and was compliant, that Vineyard's behavior did not cause him to fear for his safety, and that he had no reason to arrest Vineyard prior to the discovery of the firearm. No drugs or weapons were found during the pat-down search. In essence, the primary basis for the officer's suspicion appears to be Mullins' belief, based on the alleged drug hotline complaints and search warrant, that Vineyard has been involved in drug transactions. (The search warrant was not entered into evidence.) Although the officer's belief coupled with the other facts noted by the state could raise suspicions that Vineyard might be dangerous and might access a weapon upon returning to the vehicle, we agree with the trial court that this suspicion was merely a hunch and did not rise to the particularized suspicion required to search the passenger compartment of the vehicle.
 {¶ 24} The assignment of error is overruled.
 {¶ 25} The judgment of the trial court will be affirmed.
 BROGAN, J. and DONOVAN, J., concur. *Page 1