[Cite as *State v. Pattson*, 2011-Ohio-3507.]

IN THE COURT OF APPEALS OF MONTGOMERY COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 24224 |
| vs. | : | T.C. CASE NO. 09CR1215 |
| JOSEPH J. PATTSON | : | (Criminal Appeal from Common Pleas Court) |
| Defendant-Appellant | : | |

. . . . . . . . .

O P I N I O N

Rendered on the 15th day of July, 2011.

. . . . . . . . .

Mathias H. Heck, Jr., Pros. Attorney; Timothy J. Cole, Asst. Pros. Attorney, Atty. Reg. No.0084117, P.O. Box 972, Dayton, OH  45422
      Attorney for Plaintiff-Appellee

Richard S. Skelton, 130 W. Second Street, Suite 1818, Dayton, OH  45402
      Attorney for Defendant-Appellant

. . . . . . . . .

GRADY, P.J.:

{¶ 1} Defendant, Joseph Pattson, appeals from his conviction and mandatory six year prison sentence for possession of heroin, between ten and fifty grams, R.C. 2925.11(A), which was entered on his no contest plea after the trial court overruled Defendant's motion to suppress evidence.  On appeal, Defendant challenges only

the trial court's decision overruling his motion to suppress evidence.

{¶ 2} The facts set forth in the State's memorandum in opposition to Defendant's motion to suppress, which the trial court adopted as its own findings of fact in this case, are as follows:

{¶ 3} "On April 14, 2009, at approximately 10:40 a.m., Officer Danielle Miller from the Miami Township Police Department was dispatched to the south lot of the Macy's parking lot on a report of a black Chevy Tahoe engaged in possible drug transactions with at least two separate vehicles.  Officer Miller has been a police officer for approximately 10 years.

{¶ 4} "The initial call to the police department came from Anthony Coffey who was working Dayton Mall Security.  Mr. Coffee was operating the mall surveillance cameras when he came upon a Chevy S-10 pickup truck that pulled into a parking space next to a black Chevy Tahoe.  Mr. Coffey testified that he observed what appeared to be a drug trafficking transaction between the passenger of the S-10 and the sole occupant of the Chevy Tahoe.  Mr. Coffey then contacted Miami Township Police Department and reported his observations.  While Mr. Coffey was on the phone with Miami Township Police Department, he observed what he believed to be another drug trafficking transaction involving the Chevy Tahoe and a maroon SUV.  Mr. Coffey was still on the phone with the

dispatcher and relayed this information as well.

{¶ 5} "As Officer Miller responded to the call, she indicated that she was concerned for her safety because in her experience, weapons are usually involved with drug trafficking. Officer Miller also testified that the Dayton Mall parking lot is a high crime area. When Officer Miller responded to the parking lot of Macy's, she observed the black Chevy Tahoe and made contact with the driver and sole occupant, which was the Defendant. At that time, Officer Miller had not initiated her overhead lights or sirens. Officer Miller told Defendant about the complaint and asked him what he was doing. Defendant responded that he was dropping someone off at the mall. Officer Miller next asked for Defendant's license and insurance, and he complied with her request. Officer Miller testified that Defendant's vehicle was running during this encounter.

{¶ 6} "Officer Miller testified that when she initially approached the vehicle, Defendant's hands were down out of her view and that she asked him to place them on the steering wheel. Officer Miller testified that as she was talking to Defendant, Defendant took his hands off of the steering wheel where she could not see them. Officer Miller testified that this caused her concern for her safety because she could not tell whether he was attempting to reach for a weapon. Officer Miller testified that

she could not see what his hands were doing at all because of the height of the Chevy Tahoe and this additionally caused her to be concerned for her safety.

{¶ 7} "Major Dipietro of the Miami Township Police Department arrived while Defendant was still inside of the vehicle talking to Officer Miller.  Officer Miller asked Defendant to exit the vehicle based upon his hand movements and the fact that she could not see down into the vehicle due to its height.  Defendant complied with the officer's request and exited the vehicle.  Officer Miller advised Defendant that she was going to pat him down for weapons and then completed a pat-down of this Defendant with negative results.  Officer Miller then had Major Dipietro due (sic) a more thorough pat-down since he was a male officer.

{¶ 8} "Major Dipietro, an officer with over twenty-two years of experience, then conducted a more thorough pat-down of Defendant's private region.  Major Dipietro testified that when he initially responded to the call, he was concerned for officer safety since the initial dispatch indicated that Defendant's vehicle was possibly engaged in drug trafficking.  Major Dipietro testified that it has been his experience during his twenty two years of police work that weapons are commonly involved in drug trafficking.

{¶ 9} "As Major Dipietro patted down Defendant, he indicated

that Defendant appeared nervous and fidgety. Major Dipietro also testified that while he was patting down Defendant, Defendant also removed one of his hands from the Tahoe, which also caused Major Dipietro concern. In addition, Major Dipietro testified that based on his observations, it appeared Defendant did not want to get too far away from the open driver's door. Major Dipietro testified that after the pat-down, he asked Defendant to move down towards the rear of the vehicle so that he could check the lunge area to make sure that there were no weapons. Major Dipietro testified that based on Defendant's actions, it appeared again that he did not want to get too far away from the driver compartment area. Therefore, Major Dipietro asked Defendant to move down further to which Defendant complied.

{¶ 10} "At that time, Major Dipietro searched the lunge area in order to make sure that Defendant could not gain access to any weapons. At the time Major Dipietro searched the lunge area, he testified that it was possible that Defendant was going to be placed back inside the vehicle. Further, when Major Dipietro searched the lunge area of the vehicle, Defendant was standing very close to the open driver's door unrestrained, and not in handcuffs.

{¶ 11} "During the search of the lunge area for weapons, Major Dipietro saw two baggies of heroin capsules sticking out from underneath the center console. Major Dipietro then finished

searching the lunge area for weapons before exiting the vehicle. Once outside, Major Dipietro gave the indication to Officer Miller to place handcuffs on Defendant. Once Officer Miller attempted to handcuff Defendant, Defendant broke free and took off running through the mall parking lot before being apprehended."

**ASSIGNMENT OF ERROR**

"THE SEARCH OF MR. PATTSON'S AUTOMOBILE VIOLATED HIS FOURTH AMENDMENT CONSTITUTIONAL PROTECTIONS."

{¶ 12} Defendant argues that the trial court erred when it overruled his motion to suppress the evidence because his Fourth Amendment rights were violated when police conducted a protective search of the interior of his vehicle for weapons in the absence of a reasonable suspicion that he was armed and dangerous and might gain immediate control of a weapon hidden inside the vehicle. That search for weapons produced the heroin capsules that form the basis for the possession charge in this case.

{¶ 13} When considering a motion to suppress the trial court assumes the role of the trier of facts and is therefore in the best position to resolve factual questions and evaluate the credibility of the witnesses. *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id*. Accepting those facts as true,

the appellate court must then independently determine, without deference to the trial court's conclusion, whether those facts satisfy the applicable legal standard. *Id.*

{¶ 14} Defendant does not challenge the trial court's findings that the officers' initial investigative stop and detention pursuant to *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 l.Ed.2d 889, was justified by a reasonable suspicion of illegal drug activity, a conclusion with which we agree. Rather, Defendant challenges only the search of the interior, driver's area of his vehicle for weapons during that *Terry* stop, claiming that police lacked the necessary legal justification for that warrantless weapons search; that police had a reasonable suspicion that there was a weapon inside the car.

{¶ 15} In *State v. Wilcox*, 177 Ohio App.3d 609, 2008-Ohio-3856, ¶17-18, this court wrote:

{¶ 16} "The United States Supreme Court has found that during an investigative stop, a police officer may conduct a protective search of the interior of the vehicle for weapons. *Michigan v. Long* (1983), 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201. This search is consistent with and is an extension of the principles set forth in *Terry* regarding a frisk of a person. Id.; *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. In order to perform a protective search, the officer must have 'a reasonable

belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.' Id., quoting *Terry,* 392 U.S. at 21, 88 S.Ct. 1868, 20 L.Ed.2d 889; see also *State v. Smith* (1978), 56 Ohio St.2d 405, 10 O.O.3d 515, 384 N.E.2d 280. The search must be limited to those areas in which a weapon may be placed or hidden. Id.

{¶ 17} "The standard employed in determining whether a protective search is justified is an objective standard: '[W]ould the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate?' *State v. Bobo* (1988), 37 Ohio St.3d 177, 178-179, 524 N.E.2d 489, quoting *Terry,* 392 U.S. at 21-22, 88 S.Ct. 1868, 20 L.Ed.2d 889. In determining whether a protective search is objectively warranted, courts look at the totality of the circumstances, as viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold. *State v. Andrews* (1991), 57 Ohio St.3d 86, 565 N.E.2d 1271, citing *United States v. Hall* (C.A.D.C.1976), 525 F.2d 857. Courts generally consider factors such as the high-crime nature of the area, the time of day, the experience of the officers involved, whether the officer was away from his

cruiser, and suspicious activities by the defendant, such as furtive gestures. *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489; *Andrews,* 57 Ohio St.3d 86, 565 N.E.2d 1271. See also *Smith,* 56 Ohio St.2d 405, 10 O.O.3d 515, 384 N.E.2d 280 (protective search was justified when the police officers saw defendant push something under his seat after car was stopped); *State v. Woods* (1982), 8 Ohio App.3d 56, 8 OBR 87, 455 N.E.2d 1289 (protective search was justified when police had information that defendant was armed and police saw defendant make furtive gesture). But see *State v. Vineyard* (Jan. 11, 2008), Montgomery App. No. 22266, 2008-Ohio-204, 2008 WL 186669 (protective search not justified in stop for tinted windows, even though officer had knowledge that defendant had been implicated in drug information hotline calls, had previously been subject of a search warrant for drugs, recognized principle that drugs and weapons normally go hand in hand, and stop was in high-crime area; trial court was correct in conclusion that these factors were tempered by factors that defendant was cooperative, no weapons or drugs were found during pat-down search, and no information indicated defendant was involved in a drug deal at the time)."

{¶ 18} In arguing that the totality of the facts and circumstances in this case do not give rise to a reasonable suspicion that there was a weapon inside Defendant's vehicle, and

therefore justify a limited search of the interior, driver's area of that vehicle for weapons, Defendant claims that other than the fact police were investigating possible drug activity, there was nothing else that caused the officers to be reasonably concerned for their safety. The officers themselves observed no illegal activity by Defendant, it was 10:40 in the morning, no contraband or weapons were seen, Defendant made no furtive movements, Defendant cooperated fully with police, and there were two police officers present. Although Officer Miller testified that Defendant's conduct in moving his hands to a position where she could not see them caused her to be concerned for her safety, Defendant moved his hands once to get his driver's license, at Officer Miller's request, and moved his hands a second time but immediately placed them back on the steering wheel when requested to do so by Officer Miller.

{¶ 19} Dayton Mall security officer, Anthony Coffey, while monitoring video surveillance cameras, observed a white Chevy S-10 pickup truck pull into the South Macy's parking lot and park in a space near pole 49, right next to a black Chevy Tahoe. An individual exited the S-10 and entered the Tahoe. Coffey observed an exchange of items take place, something being passed back and forth, and that the individual then exited the Tahoe, got back into the S-10, and drove away. Believing he had just witnessed

a drug transaction, Coffey called Miami Township police. While Coffey was still on the phone with police relating what he had just seen, a maroon SUV pulled into the parking space just vacated by the S-10. Once again, an individual exited the maroon SUV and entered the Tahoe. Coffey again observed an exchange of items, some kind of transaction in the front seat, followed by the individual exiting the Tahoe, getting back into the maroon SUV, and then driving away. Coffey described these events to the police dispatcher in real time as they happened. Both officers who were dispatched to the scene, Officer Miller and Major Dipietro, were advised by their dispatcher that possible drug transactions had just occurred in the Dayton Mall parking lot. Both officers testified that the Dayton Mall parking lot is known for drug activity, and drug transactions often involve weapons.

{¶ 20} The well recognized nexus between guns and drug activity, particularly where, as here, the suspected drug activity involves drug trafficking and not merely use or possession of drugs, and an officers's fear of violence when investigating that type of activity, will justify a pat down search for weapons. See: *State v. Evans* (1993), 67 Ohio St.3d 405, 413; *State v. Martin*, Montgomery App. No. 20270, 2004-Ohio-2738, at ¶17; *State v. Hunter*, Montgomery App. No. 20917, 2006-Ohio-2678 at ¶8-15.

{¶ 21} Officer Miller testified that she was concerned for

her safety because Defendant would not keep his hands on the steering wheel where she could see them, despite her requests that he do so. Major Dipietro became concerned because Defendant appeared to be reluctant to comply with their requests to move away from the driver's compartment of the vehicle while Dipietro searched that area of the vehicle for weapons.

{¶ 22} Based upon the totality of these facts and circumstances, including that police were investigating possible drug trafficking activities, the recognized nexus between guns and drug trafficking, and Defendant's failure to keep his hands in plain sight and his reluctance to move away from the driver's area of his vehicle, police had a reasonable suspicion that Defendant might be armed and dangerous and might gain immediate control of a weapon inside his vehicle upon returning to it. Accordingly, the limited protective search of the driver's area of Defendant's vehicle for weapons was reasonable and did not violate Defendant's Fourth Amendment rights. *Terry v. Ohio, supra*; *Michigan v. Long, supra*; *Wilcox, supra.*

{¶ 23} In support of his claim that the limited protective search of the driver's area of his vehicle for weapons violated his Fourth Amendment rights, Defendant cites our decision in *State v. Vineyard*, Montgomery App. No. 22226, 2008-Ohio-204. That case is factually distinguishable. In *Vineyard*, unlike this case,

police did not have a reasonable suspicion that Defendant was engaged in drug transactions at the time he was stopped by police. The information police had in *Vineyard* regarding the defendant's involvement in drug activities concerned past, not present, events.

{¶ 24} Defendant also cites *State v. Kaine*, Cuyahoga App. No. 90719, 2008-Ohio-5486, wherein the Eighth District Court of Appeals concluded that the trial court erred in denying Defendant's motion to suppress where officers stopped and searched Defendant's vehicle in a high drug activity area after conducting surveillance on Defendant's vehicle in a parking lot and observing what appeared to be a drug transaction. While the facts in *Kaine* have several similarities to the facts in this case, there are two important differences. First, this case involves two suspected drug transactions involving Defendant's vehicle and other vehicles in a short period of time, not just one transaction. Second, in this case, unlike *Kaine*, during each of the two separate transactions an exchange of items was observed. In short, there is a stronger reasonable suspicion of drug trafficking present in this case.

{¶ 25} Based upon the totality of the facts and circumstances in this case, officers possessed a reasonable, articulable suspicion that Defendant might be armed and might gain immediate control of a weapon inside his vehicle upon returning to that vehicle. As the Supreme Court found in *Terry*, "the record

evidences the tempered act of a policeman who in the course of an investigation had to make a quick decision as to how to protect himself and others from possible danger, and took limited steps to do so." *Id.*, at p. 28. Therefore, the protective search of the driver's area of Defendant's vehicle for weapons did not violate Defendant's Fourth Amendment rights.

{¶ 26} Defendant's assignment of error is overruled. The judgment of the trial court will be affirmed.

DONOVAN, J. And FROELICH, J., concur.

Copies mailed to:

Timothy J. Cole, Esq.
Richard S. Skelton, Esq.
Hon. Dennis J. Adkins