[Cite as *State v. Franklin*, 2026-Ohio-1189.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                                   No. 115200

    v.                                    :

STETSON FRANKLIN,                       :

    Defendant-Appellant.         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 2, 2026

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-692783-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Brittany Stipich, Assistant Prosecuting Attorney, *for appellee*.

Maxwell Martin, *for appellant*.

EILEEN T. GALLAGHER, J.:

{¶ 1} Appellant Stetson Franklin ("Franklin") challenges the judgment of the trial court denying his motion to suppress evidence obtained from the search of his vehicle following a traffic stop.

{¶ 2} After a thorough review of the applicable law and facts, we find that the search of Franklin's vehicle was justified as a protective sweep and that the traffic stop was not unreasonably extended. We affirm the judgment of the trial court.

## I. Factual and Procedural History

{¶ 3} Deputy David Garber ("Dep. Garber") and his partner, Deputy Kasey Loudermilk ("Dep. Loudermilk"), were on East 17th Street in downtown Cleveland when they saw a bright green Chevrolet Camaro traveling westbound on Payne Avenue. (Tr. 20 and 23.) The speed limit was 25 miles per hour, and the vehicle was traveling at approximately 40 miles per hour. (Tr. 20-21; bodycam video.) The officers followed the vehicle and caught up to it on Chester Avenue, where they initiated a traffic stop.

{¶ 4} Dep. Loudermilk approached the vehicle and asked Franklin for his driver's license and proof of insurance. He asked if Franklin had a firearm in the vehicle, and Franklin stated that he did not. (Tr. 34.) When Franklin was retrieving his license and insurance information from the center console, Dep. Garber was on the passenger's side of the vehicle and observed a loaded firearm magazine in the console. (Tr. 16.) The officers checked Franklin's identification through their computer and learned that he had been convicted of an offense that prohibited him from possessing a firearm. (Tr. 16, 17, and 34.)

{¶ 5} After seeing the magazine and also learning that Franklin had a history of drug trafficking, the officers called for a drug-sniffing police canine. Franklin was told to exit his vehicle so that a canine could perform an exterior sniff of the vehicle.

He did not immediately comply and asked questions about the sniff. (Tr. 35 and 42; bodycam video.) Dep. Loudermilk asked Franklin again if there were any firearms in the vehicle, and Franklin stated twice, "I don't admit to that." (Bodycam video.)

{¶ 6} After being informed that he would be arrested if he did not exit the vehicle, Franklin complied and was placed in the back of the police cruiser. (Tr. 36.) The officers believed that Franklin could have been a flight risk or dangerous after he had refused to exit his vehicle, so Franklin was placed in the police cruiser. (*Id.*)

{¶ 7} A drug-sniffing police canine performed a perimeter sniff of the vehicle. The canine did not indicate the presence of drugs in Franklin's vehicle.

{¶ 8} Franklin was then asked for consent to search his vehicle, which he denied. (Tr. 46.) Dep. Loudermilk mentioned the presence of the magazine to Franklin and asked if he owned a firearm. Franklin stated that it was "just a magazine," and that he had a firearm at home. (Bodycam video; tr. 49.)

{¶ 9} Dep. Loudermilk consulted with two other officers on the scene as to whether he could search the vehicle. (Bodycam video.) Dep. Loudermilk then contacted the "officer in charge" to advise him of the situation. (Tr. 37.) The "officer in charge" told him to do a protective sweep of the vehicle. (*Id.*) The deputies then conducted a protective search of the vehicle, which included searching the center console and glove compartment.[1] The search was to ensure "the vehicle was safe" so that if Franklin was returned to his vehicle, he could not use a firearm against the

---

[1] The terms "protective sweep" and "protective search" appear to be used interchangeably.

deputies. (Tr. 38.) During the sweep, Dep. Loudermilk discovered a loaded firearm in the glove compartment. (Tr. 37-38.)

{¶ 10} Franklin was ultimately given a citation for speeding and released. He was later indicted on one count of having weapons while under disability and one count of carrying concealed weapons.

{¶ 11} Franklin moved to suppress the evidence obtained from the search of his vehicle, arguing that (1) the search of his vehicle was conducted without a warrant, (2) there was no reasonable suspicion that he was committing or was about to commit a crime, (3) there was no probable cause to search his vehicle, (4) there were no exigent circumstances to justify the search, and (5) the deputies unreasonably extended the traffic stop. The State opposed the motion, arguing that the stop was not unreasonably long and that the search of Franklin's vehicle was justified as a protective sweep. The court held a hearing where the State presented the testimony of both deputies. A portion of Dep. Loudermilk's bodycam video of the stop was utilized during testimony, but the video was not identified as an exhibit.

{¶ 12} After the hearing, the court requested additional briefing, which both sides submitted. The court subsequently issued a journal entry and opinion denying the motion to suppress. The trial court concluded that the duration of the traffic stop was not unreasonably long but that no reasonable suspicion of illegal activity existed to justify a search of the vehicle. Nevertheless, the trial court determined that a protective sweep of the vehicle was justified by the totality of the circumstances.

{¶ 13} Following the denial of the motion to suppress, Franklin pled no contest to one count of having weapons while under disability and one count of carrying concealed weapons.

{¶ 14} Franklin was convicted and sentenced; he then filed the instant appeal.

## II. Law and Analysis

{¶ 15} Franklin's sole assignment of error argues that the trial court erred in denying his motion to suppress. Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). On appeal, we "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). Accepting these facts as true, we must then "independently determine as a matter of law, without deference to the trial court's conclusion, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist. 1997). "However, we review de novo the application of the law to these facts." *State v. Belton*, 2016-Ohio-1581, ¶ 100, citing *Burnside* at ¶ 8.

{¶ 16} The material facts are not in dispute in this matter. The trial court's decision summarized the testimony of the deputies and did not make any finding regarding credibility. The sole question before us is whether the facts presented at

the suppression hearing satisfy the applicable legal standard for the search of Franklin's vehicle. The State bears the burden of establishing the validity of a warrantless search. *Lakewood v. Shelton*, 2011-Ohio-4408, ¶ 13 (8th Dist.), citing *Xenia v. Wallace* 37 Ohio St.3d 216, 218 (1988).

{¶ 17} Franklin argues that the trial court erred in denying his motion to suppress because (1) the deputies lacked reasonable suspicion that he had been engaged in criminal conduct, (2) there was no probable cause to justify the search as a search incident to arrest, (3) the deputies unreasonably prolonged the traffic stop to conduct a canine search, and (4) the protective search was not justified by the circumstances of the traffic stop.

{¶ 18} We will first address the validity of the protective search. This court has noted that "'the police may search the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, if the officers possess a reasonable belief that the suspect is dangerous and may gain immediate control of weapons located in the vehicle upon returning to it.'" *State v. Kaine*, 2008-Ohio-5486, ¶ 18 (8th Dist.), quoting *State v. Vineyard*, 2008-Ohio-204, ¶ 13 (2d Dist.), citing *Michigan v. Long*, 463 U.S. 1032 (1983).

{¶ 19} In reviewing whether a protective search was justified, courts utilize an objective standard to determine if the "'facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate.'" *State v. Bobo*, 37 Ohio St.3d 177, 178-79 (1988), quoting *Terry v. Ohio*, 392 U.S. 1, 21-22 (1967). "'[T]he issue is whether

a reasonably prudent [person] in the circumstances would be warranted in the belief that his safety or that of others was in danger.'" *Long* at 1050, quoting *Terry* at 21. "Courts generally consider factors such as the high-crime nature of the area, the time of day, the experience of the officers involved, whether the officer was away from his cruiser, and suspicious activities by the defendant, such as furtive gestures." *State v. Pattson*, 2011-Ohio-3507, ¶ 17 (2d Dist.), citing *Bobo*.

{¶ 20} In the instant matter, we recognize that Franklin did not attempt to flee, nor did he engage in any furtive gestures or erratic behavior, and he willingly provided his identification to the deputies. (Bodycam video.) Dep. Garber testified that he believed that Franklin's conversations with the deputies were polite and respectful and acknowledged that he did not threaten the deputies and was not angry or belligerent. (Tr. 23-25.) The bodycam video supports Dep. Garber's testimony.

{¶ 21} When Franklin was asked if there were any firearms in his vehicle, he stated, "I don't admit to that." (Bodycam video; tr. 49.) He admitted to owning a firearm but stated that it was at his home. At the time of this admission, the officers were aware that Franklin was prohibited from owning a firearm.

{¶ 22} In denying the motion to suppress, the trial court found that the search was justified as a protective sweep because (1) Franklin was under disability and could not lawfully possess a firearm; (2) Franklin admitted to owning a firearm; (3) the officers had observed a loaded handgun magazine; and (4) the officers testified that based on their experience in the field, when a magazine is observed, a

firearm is very likely to be present. The trial court ultimately concluded that the protective sweep was warranted by the totality of the circumstances, which reflected the officers' reasonable concern for safety.

{¶ 23} Protective searches can be justified by the need to protect police and others "when police have a reasonable belief that the suspect poses a danger, that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect." *Long*, 436 U.S. at 1049.

{¶ 24} This matter is similar to *State v. Kaine*, 2008-Ohio-5486 (8th Dist.), where this court determined that a protective search was not justified where detectives' suspicion of drug activity had been based solely on a hunch, a pat-down search did not yield any drugs or weapons, and the defendant was not uncooperative or acting unusually. However, in *Kaine*, there was no observation of a loaded magazine and the defendant was not prohibited from owning a firearm while also admitting that he did, in fact, own one.

{¶ 25} As stated by the United States Supreme Court:

> In evaluating the validity of an officer's investigative or protective conduct under *Terry* [*v. Ohio*, 392 U.S. 1 (1967)], the "[touchstone] of our analysis . . . is always 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.'" *Pennsylvania v. Mimms*, 434 U.S. [106,] 108-109 (quoting *Terry, supra*, at 19). In this case, the officers did not act unreasonably in taking preventive measures to ensure that there were no other weapons within Long's immediate grasp before permitting him to reenter his automobile. Therefore, the balancing required by *Terry* clearly weighs in favor of allowing the police to conduct an area search of the passenger compartment to uncover weapons, as long as they

possess an articulable and objectively reasonable belief that the suspect is potentially dangerous.

*Long*, 463 U.S. at 1051.

{¶ 26} Here, Franklin was prohibited from possessing a firearm, yet he admitted to owning a handgun at his home and had a loaded magazine in the center console of his vehicle. From the officers' experience, the presence of a magazine meant that Franklin was likely to also have a handgun. Given the totality of the circumstances, including Franklin's firearm prohibition, his evident disregard of the same by having a firearm at his home, and the presence of the loaded magazine in the vehicle and likelihood that a handgun was also in proximity, it could be inferred that Franklin posed a danger if he were permitted to reenter his vehicle.

{¶ 27} We find that the warrantless search of Franklin's vehicle was justified because the officers had an articulable and objectively reasonable belief that Franklin was potentially dangerous at the time of the search. And upon his return to the vehicle, Franklin could have gained immediate control of a weapon located within his reach in the vehicle. The trial court therefore did not err in finding that the vehicle search was justified as a protective sweep.

{¶ 28} Franklin also argues there was no reasonable suspicion to extend the traffic stop for a canine sniff. However, this court has noted that "[e]ven without a reasonable suspicion of drug-related activity, a lawfully detained vehicle may be subjected to a canine check of the vehicle's exterior." *State v. Jones*, 2014-Ohio-2763, ¶ 23 (8th Dist.), citing *State v. Jones*, 2004-Ohio-7280, ¶ 24 (4th Dist.), citing

*State v. Rusnak*, 120 Ohio App.3d 24, 28 (6th Dist. 1997); *see also Illinois v. Caballes*, 543 U.S. 405 (2005) (An exterior dog sniff does not constitute a search within the meaning of the Fourth Amendment after a valid stop is initiated.).

{¶ 29} Additionally, Franklin contends that the traffic stop was unreasonably prolonged beyond the time it should have taken to issue his traffic citation in order to allow time for a drug-sniffing canine to conduct an exterior sniff of his vehicle.

{¶ 30} The State asserts that the exterior sniff was completed within six minutes of the initial stop of the vehicle, and therefore, it did not significantly prolong the traffic stop. We agree. "Police officers are permitted to conduct a canine sniff during the time that it takes to issue a traffic citation provided the duration of the traffic stop is not extended beyond what is reasonably necessary to resolve the traffic violation matter." *State v. Byrd*, 2022-Ohio-4635, ¶ 22 (8th Dist.), citing *In re $75,000.00 United States Currency*, 2017-Ohio-9158, ¶ 28 (8th Dist.). The bodycam video reflects that the canine unit arrived while Dep. Loudermilk was still writing the citation. After Franklin exited his vehicle and was placed in the back of the police cruiser, the canine conducted the exterior sniff, and Dep. Loudermilk continued writing the citation. Accordingly, since the traffic-violation matter had not been resolved at the time of the exterior sniff, we cannot say that the traffic stop was significantly prolonged. Franklin's arguments regarding the canine sniff are meritless.[2]

---

[2] Franklin also argued in his brief that there was no probable cause to justify the search of his vehicle. However, we need not analyze this argument because it was waived by the State. Throughout these proceedings, the State only argued that the search should

{¶ 31} Franklin's sole assignment of error is overruled, and the judgment of the trial court is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

MICHELLE J. SHEEHAN, A.J., and
MICHAEL JOHN RYAN, J., CONCUR

---

be upheld as a protective sweep and defended the motion to suppress in the trial court without ever asserting that probable cause existed to justify the search of Franklin's vehicle.