[Cite as *In re M.P.*, 2014-Ohio-2846.]

# IN THE COURT OF APPEALS
## FIRST APPELLATE DISTRICT OF OHIO
## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: M.P. | : | APPEAL NOS. C-130663 |
| | | C-130741 |
| | : | TRIAL NOS. 13-4853X |
| | | 13-4852X |
| | : | |
| | : | *O P I N I O N.* |

Appeals From: Hamilton County Juvenile Court

Judgments Appealed From Are: Reversed, Adjudications Vacated, and Appellant Discharged

Date of Judgment Entry on Appeal: June 30, 2014

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Melynda J. Machol*, Assistant Prosecuting Attorney, for Plaintiff-Appellee the State of Ohio,

*Gordon C. Magella*, for Defendant-Appellant M.P.

Please note: this case has been removed from the accelerated calendar.

**DEWINE, Judge.**

{¶1}   M.P. was adjudicated delinquent for resisting arrest and carrying a concealed weapon.  In this appeal, he challenges the stop that led to the charges against him.   The stop was based on a detective's hunch that M.P. had been involved in an incident involving a gun days earlier, the fact that M.P. was wearing baggy shorts, and M.P.'s "unusual interest" in a passing police car.  We conclude that the detective did not have a reasonable suspicion that criminal activity was afoot at the time when M.P. was stopped, and therefore the juvenile court should have suppressed the evidence that was discovered as a result of the stop.  As a result, we vacate M.P.'s adjudications.

{¶2}   On May 26, two days prior to the stop at issue, M.P. was present during an incident in which an unknown suspect had fired a gun at a victim.  The victim was not harmed.  M.P. and two other young males were listed on the police report as witnesses. According to the report,

> [the police officer] was flagged down by citizens saying people were chasing someone and shooting a gun.  They pointed out 3 [male blacks] as being involved somehow.  We stopped them and questioned them and they stated a [male white] shot at them and they were running away.  Gun was recovered behind house on Rosemont.  I believe there's much more to this but without [male white], we don't know what [occurred].   Also citizens gave conflicting info.

{¶3}   Detective Mark Longworth investigated the May 26 incident.  As he tells it, he "was suspicious that [the] gun [that was found on May 26] may have belonged to either [M.P.] or one of the people he was with, because it was a gun that was, according

to the report, near where they stopped these young men." Based on this suspicion, Detective Longworth began watching M.P.'s residence.

{¶4} On May 28, Detective Longworth saw M.P. and a friend walking down the street. He testified that M.P. was wearing baggy shorts—clothing that, according to Detective Longworth, was "such that you could conceal a firearm." Also, Detective Longworth noted that when a police cruiser drove by, M.P. "appeared to blade his body." Exactly what "blading his body" means is unclear, but based on Detective Longworth's testimony, it would seem that M.P. turned his body in such a way as to demonstrate "an unusual interest" in the passing car. Detective Longworth noted that other people on the street at that time did not display the same behavior. Based on these observations, Detective Longworth requested that uniformed police officers stop M.P. so that Detective Longworth could talk to him.

{¶5} Police Officer Jeff Zucker received the call to stop M.P. According to Officer Zucker, the radio dispatch gave M.P.'s description and location. No other information was given about why Detective Longworth wanted him stopped. Officer Zucker and his partner exited their police cruiser, and asked M.P. and his friend to stop. M.P. refused to stop, questioning why the police officers were stopping him. When M.P. continued to refuse to stop, Officer Zucker's partner put a hand on M.P., who became "very agitated and began pulling away." The police officers then restrained him physically and put handcuffs on him. When the handcuffs were put on M.P., he told the police officers that he had a gun in his pocket. As a result, M.P. was charged with resisting arrest and carrying a concealed weapon.

{¶6} M.P. filed a motion to suppress the evidence emanating from the stop, arguing that the police officers had neither a reasonable, articulable suspicion to stop M.P. nor probable cause to arrest him. Following a hearing, the court denied the motion

to suppress. M.P. was subsequently adjudicated delinquent for committing acts that, had they been committed by an adult, would have constituted resisting arrest and carrying a concealed weapon.

{¶7} M.P.'s first assignment of error is that the trial court erred when it denied his motion to suppress. M.P. argues that the uniformed police officers' detention of him was an arrest for which they had no probable cause. Alternatively, he contends that even if the detention was not an arrest, the police officers did not have a reasonable, articulable suspicion to stop him. We conclude that the motion should have been granted because the record does not support the finding that the police officers had a reasonable, articulable suspicion that criminal activity was afoot when they stopped M.P.

{¶8} The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. To justify a person's arrest under the Fourth Amendment, the state must show that the police officer had probable cause, defined as "sufficient information from a reasonably trustworthy source to warrant a prudent man in believing that a felony has been committed and that it has been committed by the accused." *State v. Fultz*, 13 Ohio St.2d 79, 234 N.E.2d 593 (1968), paragraph one of the syllabus. As he testified at the suppression hearing, Detective Longworth's suspicion about M.P.'s involvement in the May 26 incident was not strong enough to justify a warrant: "Well, I would never look at a [police] report like this and then just go sign a warrant on somebody, without at least trying to speak with him, or find out more of what happened[.]"

{¶9} Courts have long recognized, however, that the Fourth Amendment is not violated when an officer stops a person for a brief, investigative stop based on a reasonable, articulable suspicion that the person "is, or is about to be, engaged in

4

criminal activity." *U.S. v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). "Based upon [the totality of the circumstances] the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Id.* at 417-418. Thus, in *Terry v. Ohio*, 392 U.S. 1, 21-23, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court concluded that a police officer lawfully stopped three men based on his "on-the-spot observations" that led him to conclude a crime was imminent.

{¶10} A police officer's reasonable, articulable suspicion can be transferred to a fellow officer. Under the "fellow-officers rule," a police officer may initiate a stop based on the "reasonable suspicion of criminal activity through sources other than his own observations, including radio broadcasts." *State v. Lanning*, 5th Dist. Licking No. 99 CA 38, 1999 Ohio App. LEXIS 4380 (Sept. 16, 1999). *See U.S. v. Hensley*, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1999). But if the request from the fellow officer is not based on reasonable suspicion, then a stop based on the request violates the Fourth Amendment. *Hensley* at 232. Here, Officer Zucker acknowledged that, absent the radio dispatch, he had no reasonable suspicion upon which to stop M.P., so we look to Detective Longworth's observations to determine whether the stop was legal.

{¶11} We conclude that no reasonable, articulable suspicion existed at the time the stop was initiated. The impetus for the stop was the investigation of the earlier incident. Although the soundness of Detective Longworth's hunch of M.P. was borne out by the end result, there was no evidence that at the time of the stop M.P. was presently involved in a criminal activity. Detective Longworth, who had been watching M.P for only five to ten minutes, had no basis to believe that a crime had just occurred, was occurring, or would occur soon. The fact that Detective Longworth suspected some

involvement in the past incident did not create a reasonable suspicion that M.P. was presently engaged in a criminal act.

{¶12}    Aside from Detective Longworth's questions about the incident days earlier, the only additional facts cited as creating reasonable suspicion were M.P.'s baggy shorts and his particular interest in a passing police car.  Detective Longworth testified that M.P.'s concealment of a firearm in his shorts "could be a possibility, given what had happened before."  But baggy shorts are not an uncommon apparel choice, and a particular interest in a police car hardly indicates that someone is committing or is about to commit a crime.  M.P.'s baggy shorts and his interest in the police car fail to create the "objective manifestation" of ongoing or imminent criminal activity necessary to justify an investigatory stop.  *Cortez*, 449 U.S. at 417, 101 S.Ct. 690, 66 L.Ed.2d 621.

{¶13}    Further, M.P.'s actions following the uniformed police officers' requests to stop cannot be used to justify the stop.  Absent reasonable suspicion to justify a stop, a police officer's interaction with a person can be only consensual.  *State v. Taylor*, 106 Ohio App.3d 741, 747, 667 N.E.2d 60 (2d Dist.1995).  M.P. was under no obligation to stop for the officers.  *Id.  See also U.S. v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).

{¶14}    Here, the only evidence in the record was that M.P. was a "witness" two days prior to a suspicious shooting incident, that he wore baggy clothes, and turned to look intensely at a passing police car. We do not think that this alone amounted to "reasonable suspicion" that M.P. was presently engaged in criminal activity. Because the officers did not have a reasonable suspicion that criminal activity was afoot, they could not legally stop M.P.  Any evidence emanating from the stop should have been suppressed.  And absent the evidence, M.P. could not be adjudicated delinquent for the charges.  The first assignment of error is sustained.

{¶15}   The first assignment is dispositive of M.P.'s appeal.   The second assignment of error is therefore moot, and we decline to address it.   The trial court's denial of M.P.'s motion to suppress is reversed, the judgments of the court adjudicating M.P. delinquent are vacated, and M.P. is discharged from further prosecution for these offenses.

Judgment accordingly.

**HILDEBRANDT, P.J.,** and **HENDON, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.