[Cite as *State v. Williams*, 2024-Ohio-943.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

CLARENCE WILLIAMS, JR.,

Defendant-Appellant.

---

### OPINION AND JUDGMENT ENTRY
### Case No. 23 MA 0007

---

Criminal Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 20 CR 538

**BEFORE:**
Mark A. Hanni, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Reversed, Vacated and Remanded.

---

*Atty. Gina DeGenova*, Mahoning County Prosecutor*,* and *Atty. Edward A. Czopur*, Assistant Prosecuting Attorney, Mahoning County Prosecutor's Office, for Plaintiff-Appellee and

*Atty. Robert T. McDowall*, *Jr.,* Robert T. McDowall Co., LLC*,* for Defendant-Appellant.

Dated: March 14, 2024

**HANNI, J.**

{¶1} Defendant-Appellant, Clarence Williams, Jr., appeals from a Mahoning County Court of Common Pleas judgment convicting him of having a weapon while under disability. He was sentenced to a total of nine months in prison. He challenges the trial court's denial of his motion to suppress evidence of a gun found after a police officer stopped and frisked him. For the following reasons, Appellant's sole assignment of error has merit.

{¶2} On September 17, 2020, Appellant was charged with having a weapon while under disability in violation of R.C. 2923.13(A)(3) and (B), a third-degree felony, and carrying a concealed weapon in violation of R.C. 2323.12 (A)(2) and (F)(1), a fourth-degree felony.

{¶3} On April 20, 2021, Appellant, through counsel, filed a motion to suppress a firearm and small amount of marijuana found after a search of his person by Youngstown Police Department (YPD) Officer Casey Kelly. Appellee filed a response and the court held an evidentiary hearing on October 13, 2021. At the hearing, Officer Kelly testified on behalf of the State, and Destiney Smith, Appellant's long-term girlfriend, testified on his behalf.

{¶4} The hearing began with an audio recording of a 911 phone call to the YPD on October 6, 2020. The anonymous caller stated that she was an area resident and she observed individuals standing in a carwash parking lot on Southern Boulevard arguing. She related that a man in a little silver car pulled up in the parking lot and another man ran up to his car with a gun. She stated that the car drove off and three African-American men with guns remained in the parking lot. She identified one of the men as wearing a blue tee shirt and denim shorts, another with a white tee shirt and black shorts, and a third man with a white tee shirt and an unknown color of shorts. The caller provided no other details about the men, such as age, height, weight, or hairstyle that might provide a more detailed description.

{¶5} The State presented a recording of a second 911 call to the YPD about 20 minutes later on the same date. While the caller again did not identify herself, she stated that she called before and police had not responded to her first call. She stated that the

same three males she previously described were still in the car wash parking lot and were waving guns.

{¶6} Police dispatch thereafter requested that officers respond to the car wash at 3628 Southern Boulevard. Dispatch advised that three black males were brandishing firearms at another male and the three males were described as one wearing a blue tee shirt and two others wearing white tee shirts.

{¶7} Officer Kelly testified that he was patrolling the area when he heard the dispatch call. He stated that as he was driving to the car wash, he observed three black males "generally" fitting the description located at 3606 Southern Boulevard, a clothing shop 44 yards from the car wash. He pulled up to the store, which is owned by Appellant's girlfriend, Destiney Smith. She was also outside of her store.

{¶8} Upon approaching, Officer Kelly testified that he observed three black males, one in a blue tee shirt and two others in white tee shirts. He could not recall which color tee shirt Appellant wore, but he recalled that Appellant was seated in a chair outside of the store. Officer Kelly testified that he and another officer told the three males about the dispatch call and advised them that they were going to pat the men down for weapons because they matched the dispatch description. Officer Kelly described the location as a very high crime area based on his three-year experience working in the area. He stated that he was aware of drug crimes and violent crimes occurring in the area.

{¶9} Officer Kelly further testified that he decided to pat the men down based upon the nature of the call involving weapons and the high crime area. He stated that after he advised the men of the pat down, Appellant stood up from the chair and began walking into the store. Officer Kelly stated that he continued after Appellant into the store and advised him to come back outside. Officer Kelly testified that he requested that Appellant return to the outside of the store a few more times before Appellant turned around and faced him. Officer Kelly stated that he told Appellant that he was going to pat him down for weapons and the other officer patted the other two males down for weapons.

{¶10} Officer Kelly positioned himself behind Appellant to conduct the pat down and started at Appellant's waistband. He worked his way down each leg and then worked his way back up to the upper body and arms. He testified that as he conducted the pat down, he felt the handle of a firearm in a satchel hanging across Appellant's body. Officer

Kelly stated that as he felt the firearm in the satchel, Appellant bladed his body away from him, as if to stop him from feeling the gun.

{¶11} Officer Kelly testified that he placed Appellant in handcuffs, led him back outside, and he and the other officers on the scene opened the satchel. Inside they found a gun and a small bag of marijuana.

{¶12} Destiney Smith, Appellant's girlfriend, testified on his behalf. She stated that she has been his girlfriend for 13 years and she was in front of her store with Appellant and the two other males when the police approached. She testified that Appellant had been with her at the store the entire day and she and Appellant were in the process of closing down her store for the day when the police approached.

{¶13} Ms. Smith testified that when the officers declared the pat down, Appellant walked past her back into her store. She stated that she told the officers they had nothing to do with the nature of the dispatch call and officers were at the wrong location. She testified that she told the officers that she had heard an argument occur at the veterinarian's office on the corner. She acknowledged that the officers told them that they received a description and Appellant and the two other males matched the description. Ms. Smith admitted that the descriptions matched Appellant and the two other males at her store. She noted that Appellant was wearing a white tee shirt, one of the other men had all white clothing on, and the other male had on a blue shirt.

{¶14} However, she stated that two of the officers provided two different descriptions and reasons for being at her store. She began recording the officers and went to obtain statements from other people. She also stated that when Appellant was seated outside before the police arrived, he had her satchel with him and her firearm was inside of the satchel. She had a permit for the gun and brought it with her for protection because of prior incidents occurring near her store. She confirmed that gun violence occurred in the area. She stated that she brought the satchel to the store that day and she did not tell Appellant that the gun was inside the satchel.

{¶15} Upon additional post-hearing briefing, the trial court denied Appellant's motion to suppress on February 23, 2022. The court issued a 15-page written opinion with findings of fact and conclusions of law.

**{¶16}** The trial court's findings of fact were based on its review of the testimony of Officer Kelly, the 911 calls, and Ms. Smith. It appears that Appellant has no issue with the trial court's findings of fact.

**{¶17}** Regarding its conclusions of law, the trial court began with *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)*,* indicating that it allows police officers the ability to conduct a brief investigatory stop of a person if the officer has reasonable suspicion to believe that the person is engaging in or is about to engage in criminal activity. Citing *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), the court held that determining the existence of reasonable suspicion for a *Terry* stop depends on the content of the information that the police have and its degree of reliability. The court referred to *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002), as providing that a police officer may rely on his experience and training to infer and deduce all of the information he has that an untrained person may not consider.

**{¶18}** The court then discussed the law as to officers performing a pat down of an individual for weapons after making a valid *Terry* stop. The court noted that officers are not automatically entitled to conduct the pat down based on a lawful *Terry* stop, but they must have a reasonable suspicion that the stopped individual may be armed and dangerous. The court acknowledged that the sole justification for the limited pat down is to protect the safety of the officer or others.

**{¶19}** The court discussed the cases of *Florida v. J.L.*, 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), and *In re D.W.*, 184 Ohio App.3d 627, 2009-Ohio-5406, 921 N.E.2d 1114 (2d Dist.), as similar to the instant case. The court also referred to a number of other cases, discussing their facts and the courts' holdings in each.

**{¶20}** The trial court noted that the instant case was a close one. The court discussed the 911 calls, noting that the caller did not leave her name, so she was either an anonymous informant or an identified citizen informant. The court found that the caller called twice, said that she was calling from across the street of the car wash parking lot, and she witnessed the altercation between the three black males with guns and the man driving the silver car. The court found that the caller was more reliable than an anonymous caller, but did not have the reliability of an identified informant.

**{¶21}** However, the court analyzed the facts as if the caller was anonymous, which required additional indicia of reliability under Ohio law. The court found that the caller described a man in a silver car who left the car wash area, and three black males, one wearing a blue tee shirt and jean shorts, another wearing a white tee shirt with black shorts, and a third wearing a white tee shirt and shorts of an unknown color.

**{¶22}** The court found that Officer Kelly was on route to the car wash parking lot, located at 3628 Southern Boulevard, when he noticed three men matching the description given by dispatch at 3606 Southern Boulevard. The court found that the men could have traveled from the car wash to 3606 Southern Boulevard between the time of the first call and the arrival of the officer at that location.

**{¶23}** The trial court cited *J.L.* and compared it to the facts of the instant case. The court noted that in *J.L.,* the U.S. Supreme Court held that a tip alone may be insufficient for a pat down and many other factors had to be considered. However, the trial court distinguished *J.L.,* because the informant there did not state how they knew that the defendant was carrying a gun, while the caller in the instant case stated that she observed three black males with guns and she described their clothing, as well as a man in a silver vehicle with whom one of the three men was having an altercation. The court noted that the caller made these descriptions while witnessing the event as it was occurring. The trial court also cited caselaw providing that 911 calls can be recorded and traced to determine the location from where the call was placed.

**{¶24}** The court expressed dismay that officers did not investigate the car wash parking lot. However, the court discussed Officer Kelly's testimony that he conducted the pat down of Appellant because of the caller's report. The court also discussed Appellant's reaction to Officer Kelly's advising that he would conduct a pat down by retreating into the store. The court found this "very troubling."

**{¶25}** The trial court analyzed the caller's description of the three males, comparing it to that in *J.L.* where the Supreme Court found reasonable suspicion lacking where the caller described a young black male in a plaid shirt standing at a particular bus stop and carrying a gun. The trial court held that the instant case contained descriptions of clothing worn by the three black males. The court found that the odds of one random person substantially matching one of the descriptions was relatively high, but the odds of

all three individuals matching each description "was too remote to be ignored." Accordingly, the court found that Officer Kelly was justified in his initial investigative stop of Appellant.

**{¶26}** The trial court further found that the nature of the call which reported firearms and Appellant's action when he disobeyed Officer Kelly and walked away from him justified Officer Kelly's pat down of Appellant, which yielded the gun and marijuana.

**{¶27}** The court therefore denied Appellant's motion to suppress the evidence.

**{¶28}** A trial began and one day later, the parties agreed that a mistrial occurred. The trial was rescheduled, but on December 1, 2022, Appellant entered a no-contest plea to the charge of having a weapon while under disability. The trial court sentenced Appellant to 9 months in prison and stayed the sentence pending this appeal.

**{¶29}** On January 23, 2023, Appellant filed a notice of appeal in which he asserts the following sole assignment of error:

> **THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPRESS [sic] THE FIREARM AS ITS SEIZURE BY POLICE WAS NOT SUPPORTED BY A REASONABLE AND ARTICUABLE [sic] SUSPICION**.

**{¶30}** Appellant cites *Maumee v. Weisner*, 87 Ohio St.3d 295, 297, 1999-Ohio-68, 720 N.E.2d 507, as placing the burden on the State to prove at a suppression hearing that a warrantless search or seizure meets Fourth Amendment standards of reasonableness. He cites *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and acknowledges that an officer may briefly stop and detain a person without probable cause if he has reasonable articulable suspicion that criminal activity is afoot.

**{¶31}** Appellant explains that reasonable articulable suspicion is less than probable cause, but more than a hunch. He cites *State v. Hill,* 12th Dist. Warren No. CA2015-05-044, 2015-Ohio-4655, for the holding that "[r]easonable articulable suspicion exists when there are specific and articulable facts which, taken together, with rational inferences from those facts, reasonably warrant the intrusion." Citing *State v. Popp*, 12th Dist. Butler No. CA2010-05-128, 2011-Ohio-791, he notes that reasonable and articulable suspicion is based on the totality of the circumstances "through the eyes of a reasonable

and prudent police officer on the scene who must react to events as they unfold." Citing *Arvizu*, 534 U.S. at 273, 122 S.Ct. 744, 151 L.Ed.2d 740, Appellant agrees that that this standard "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person."

**{¶32}** Appellant further agrees that under *Terry*, when an officer makes a lawful stop, he may perform a limited protective search or pat down of a person for weapons, if he has "reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." Appellant also agrees that the officer does not have to be absolutely sure that an individual has a weapon before patting him down because the officer may take precautions to protect his safety, so long as a reasonably prudent person in the same circumstances would find a belief his safety was in danger.

**{¶33}** As to his case, Appellant asserts that officers lacked reasonable and articulable suspicion to effectuate a *Terry* stop. He asserts that the officers observed no conduct from him to justify the stop as there were no reports that he was present at the car wash lot, he had not engaged in any observable criminal activity, and he did nothing to warrant a prudent officer in believing that he was armed or had violent tendencies.

**{¶34}** Appellant submits that the only justification for the initial stop was that he matched a broad, general description of a black male in a tee shirt seen brandishing a gun at a location a block away from where he was searched. He notes that the information received by the officers was based on police dispatch, who incompletely relayed information gleaned in a phone call by an anonymous caller. Appellant cites to cases concerning calls and tips to the police. He asserts that all of the cases look to the reliability of the tip or information in two broad categories. The first is the veracity and credibility of the informant himself or herself. The second examines the content of the information conveyed for reliability and corroboration/confirmation by police.

**{¶35}** Appellant discusses *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), where the Supreme Court adopted the "totality of the circumstances" test when determining whether an informant's tip established probable cause. Appellant emphasizes that the Court recognized that an anonymous tip seldom establishes the

basis of the tipster's knowledge because the credibility of the tipster is "by hypothesis largely unknown, and unknowable" due to anonymity. *Id.* at 237.

**{¶36}** Appellant also cites *Maumee,* 87 Ohio St.3d 295, 1999-Ohio-68, 720 N.E.2d 507, ¶¶ 12-14, where the Ohio Supreme Court categorized informants into three general categories based on typical characteristics. The first category was citizen informants, who identify themselves, which the Court held receives the highest degree of reliability as they have no motive to lie and most often base their information on observed conduct. *Id.* The second category are known criminal informants, who maintain less reliability because they are criminals, but have provided police with prior reliable information. *Id.* The third category are anonymous informers, who are considered unreliable, and thus independent corroboration is required by police. *Id.*

**{¶37}** Appellant relies on *Alabama v. White*, 496 U.S. at 330-331, 110 S.Ct. 2412, 110 L.Ed.2d 301, (1990), where the police conducted a *Terry* stop after a tip from an anonymous caller who stated that a woman in a particular car from a particular apartment would be immediately driving to a hotel where she would be in possession of cocaine. While the Court held that the tip alone lacked indicia of reliability due to the caller's anonymity, the police action of following the driver to the identified location constituted sufficient corroboration of criminal activity to warrant the stop.

**{¶38}** Appellant also refers to *J.L.*, 529 U.S. at 270-271, 120 S.Ct. 1375, 146 L.Ed.2d 254, where an anonymous tip from a caller to police stated that a young black male wearing a plaid shirt was carrying a gun at a particular bus stop. The Court held that an anonymous tip that a person is carrying a gun was insufficient to justify a *Terry* stop. *Id.* The Court stated that its decision in *White,* was "borderline," but was upheld because the anonymous caller knew the defendant's future movements, where *J.L.* lacked such predictive information.

**{¶39}** Appellant cites *In re D.W.*, 184 Ohio App.3d 627, 2009-Ohio-5406, 921 N.E.2d 1114 (2d Dist.), as "strikingly similar" to his case. He explains that in *In re D.W.,* the appellate court found police lacked reasonable articulable suspicion to stop an armed, non-fleeing juvenile walking near the area where an anonymous caller reported that a group of men were arguing and gunshots were fired. Appellant notes the court held that no information established that the tipster was a known informant and the only police

corroboration was that an officer observed four males in the area where the tipster heard yelling.

**{¶40}** Appellant contends that the same facts exist in this case. He submits the trial court determined that the caller was "an anonymous informant" and therefore held that additional indicia of reliability was required. The court found sufficient corroboration existed because Appellant and two males were in proximity to the location where the altercation had occurred, the caller described the race and attire of three males, and the caller stated that she had witnessed the three males brandishing firearms.

**{¶41}** Appellant submits that no one reported seeing him near the car wash, where the argument and brandishing of the firearms occurred. He further asserts that his presence in a "high-crime area" where his girlfriend's boutique was located does not establish the reasonable suspicion necessary for a *Terry* stop. Appellant contends that the trial court lacked record evidence to find that because the store was near the car wash, it was likely he walked from there to Ms. Smith's store. He asserts that no one reported seeing him leave the store; likewise, the anonymous caller did not state that she saw the suspects leave the car wash area. He notes that the caller clearly reported that the three men remained at the car wash after the person in the silver car left the scene. Appellant emphasizes that the trial court found it "troubling" that the police never went to the car wash parking lot where the caller claimed the criminal activity was occurring.

**{¶42}** Appellant contends that the reason the trial court found most persuasive in denying his suppression motion was the "detail of the description." He points out, however, that the description was actually very vague and general, as the dispatch merely stated that there were three black men: one with a blue shirt, and two with white shirts. Appellant submits that the record clearly shows the car wash and the store are located in the City of Youngstown where the African-American population predominates. He contends that the caller's description, especially as relayed by dispatch, was so generic as to only the race and clothing of the men that it could have referred to any black men wearing tee shirts on a summer day. The caller did not estimate the suspects' ages, their height, weight, general physiques, hair colors, hair styles, or any other distinguishing characteristics.

**{¶43}** Our standard of review for a ruling on a motion to suppress begins with determining whether competent, credible evidence supports the trial court's findings. *State v. Winand*, 116 Ohio App.3d 286, 288, 688 N.E.2d 9 (7th Dist.1996), citing *Tallmadge v. McCoy*, 96 Ohio App.3d 604, 608, 645 N.E.2d 802 (9th Dist.1994). This standard of review is appropriate as "[i]n a hearing on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." *State v. Venham*, 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist.1994). However, while an appellate court accepts the trial court's factual findings and relies upon the trial court's ability to assess the witness's credibility, an appellate court must independently determine, without deference to the trial court, whether the trial court applied the appropriate legal standard. *State v. Rice*, 129 Ohio App.3d 91, 94, 717 N.E.2d 351 (7th Dist.1998). We will not disturb a trial court's decision on a motion to suppress when supported by substantial credible evidence. *Id.*

**{¶44}** After review, we find Appellant's sole assignment of error has merit as to the initial stop. The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution guarantees "the right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *Terry v. Ohio*, 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Gross*, 7th Dist. Mahoning No. 01-CA-115, 2002-Ohio-3465, at ¶ 15. Police searches performed without a warrant are per se unreasonable, subject to specifically established exceptions. *State v. Smith*, 56 Ohio St.2d 405, 407, 384 N.E.2d 280 (1978).

**{¶45}** One of the exceptions is a "*Terry* stop" or an investigatory detention. In order to determine if this officer's stop and subsequent search is justified, we look at two issues: whether the initial stop was justified and whether the officer was justified in conducting the pat down of Appellant. *Terry, supra*, at 19-20.

**{¶46}** As to the initial stop, "[u]nder *Terry,* police officers may briefly stop and/or temporarily detain individuals in order to investigate possible criminal activity if the officers have a reasonable, articulable suspicion that criminal activity may be afoot." *State v. Bunn*, 7th Dist. Mahoning No. 21 MA 0004, 2021-Ohio-3636, ¶ 14, citing *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 7-8. Reasonable articulable suspicion is more than a hunch, but less than a preponderance of the evidence or

probable cause. *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). "Reasonable articulable suspicion exists when there are specific and articulable facts, which, taken together, with rational inferences from those facts, reasonably warrant the intrusion." *Terry, supra*, at 21; *State v. Bobo*, 37 Ohio St.3d 177, 178, 524 N.E.2d 489 (1988).

**{¶47}** Reasonable articulable suspicion is not precisely defined, but is determined by the totality of the circumstances "viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991). "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744 (2002), quoting *United States v. Cortez*, 449 U.S. 411, 417-418, 101 S.Ct. 690, 66 L.Ed.2d 621, (1981). The officer must have the reasonable and articulable suspicion when he stops an individual, and he cannot rely on facts obtained after the initial stop. *State v. Anderson*, 100 Ohio App.3d 688, 692, 654 N.E.2d 1034 (4th Dist. 1995).

**{¶48}** Here, the trial court concluded that this was a "close case." It is. As Appellant asserts, Officer Kelly stopped him based on a description via dispatch from an anonymous caller who reported observing three black males waving guns and one of them having an altercation with another male in a silver vehicle in the car wash parking lot at 3628 Southern Boulevard. The caller described the males as African-American, with two wearing white tee shirts and one wearing a blue tee shirt. While the caller gave more of a description, providing that the three were wearing shorts and gave the color of two of the men's shorts, this was not provided to the officers. As Officer Kelly drove to the car wash, he observed three black men wearing shirts that matched the colors given in the dispatch description located outside of a clothing shop at 3606 Southern Boulevard, a location at the other end of the block from the car wash parking lot.

**{¶49}** As Appellant asserts, the United States Supreme Court in *J.L.*, 529 U.S. at 272, 120 S.Ct. 1375, held that an anonymous caller's tip that a young black male in a plaid shirt who was standing at a particular bus stop had a firearm lacked the indicia of reliability. On the basis of the call, police officers went to the bus stop and observed three

black males, one of whom was wearing a plaid shirt. None of the males made any unusual movements and officers had no reason to suspect that they were engaging in any type of criminal conduct. An officer frisked J.L. and seized a gun that he found in J.L.'s pocket.

{¶50} The Court held that while the description provided by the caller did provide an indicia of reliability as to the suspect's clothing and location, more was required. *Id.* at 272. The Court held that, "[t]he reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *Id.* The Court explained that, "we hold that an anonymous tip lacking indicia of reliability of the kind contemplated in *Adams* [*v. Williams*, 407 U.S. 143, 146–147, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972)], and [*Alabama v.*] *White* [496 U.S. 325, 110 S.Ct. 2412], does not justify a stop and frisk whenever and however it alleges the illegal possession of a firearm."

{¶51} In *Adams, supra,* at 147, the Court upheld a *Terry* stop of a suspect based upon an informant's tip because the officer knew the informant personally and received information from him in the past. The Court held that the informant had more indicia of reliability than an anonymous telephone tip because of the prior relationship, the ability of the officer to immediately verify the tip at the scene, and because the informant could have faced immediate arrest for making a false complaint if the tip was wrong. *Id.*

{¶52} In *Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, the Court held that a tip provided by an anonymous caller lacked sufficient indicia of reliability on its own, but coupled with independent police investigation, rendered the tip sufficiently reliable. Police had responded to an anonymous caller who stated that Vanessa White would be leaving a particular apartment complex in a particular car with the right taillight broken. The caller further stated that White would be driving to a particular motel, and she would be carrying an ounce of cocaine in a brown attaché case. Officers stopped White's vehicle before it arrived at the motel, asked if they could search the case, and they found marijuana in the case and 3 milligrams of cocaine in White's purse.

{¶53} The Supreme Court held that "[r]easonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability." *Id.* at 330. The Court found that the case was a close one, but both prongs

Case No. 23 MA 0007

were met even though not all of the caller's information was verifiable. *Id.* The Court explained that the police corroborated, within the timeframe indicated by the caller, that a woman left the particular apartment building and got into the described vehicle. *Id.* at 332. The Court also found that the future activity predicted by the caller demonstrated that the caller had special familiarity than most people. *Id.* The Court concluded that, "[w]hen significant aspects of the caller's predictions were verified, there was reason to believe not only that the caller was honest but also that he was well informed, at least well enough to justify the stop." *Id.*

{¶54} *In re D.W.*, 184 Ohio App.3d 627, 2009-Ohio-5406, 921 N.E.2d 1114 (2d Dist.) is similar to the instant case. There, a police officer received a dispatch reporting shots fired and men arguing in the street. Upon his arrival at the scene, the officer observed four black males walking on the side of the street and he stopped them to determine if they were involved with the shooting. As he identified himself, one of the males fled. The officer handcuffed the other three, including D.W., and the officer testified that he did not know if any of the men, the one fled or the three handcuffed, had a weapon on them. He testified that the location was a high crime area where shots were fired often. He asserted that he believed that he had a reasonable suspicion based on the dispatch call to believe that the men may have been armed.

{¶55} On cross-examination, the officer testified that he had been a police officer for two years and the dispatch call did not give a specific address, but rather a general area. He further testified that dispatch did not give a description of the men or indicate the number of men, but said that they were yelling. Another officer testified that she also responded to the scene and it was a high crime area. She indicated that she patted down D.W. and felt a lump. He told her that it was a razor blade and when she reached into his pocket, she retrieved a baggie of crack and a razor blade.

{¶56} The appellate court began by finding that the tip did not come from an informant or known person, so the prosecution was required to show subsequent events that corroborated the tip. *Id.* at ¶ 32. The court found that the officer was able to only partially corroborate the tip with his identification of four males present in the area. *Id.* The court noted that the four males were not fighting or yelling, as the dispatch caller

indicated. *Id.* Further, the officer said that D.W. did not make any furtive movements and the juveniles were merely walking down the street. *Id.*

**{¶57}** The appellate court found that the fact that officers and the juveniles were in a high crime area was not sufficient by itself to create reasonable articulable suspicion. *Id.* at ¶ 32. The court held that the dispatch description was vague as to everything except the general vicinity, and D.W. demonstrated no conduct indicating criminal behavior or that he had a weapon. *Id.* at ¶ 34. The court also noted that D.W. cooperated with officers, even though one of the other males had fled*. Id.*

**{¶58}** Similarly here, the anonymous caller indicated that she was a resident, called twice, and related her present sense impressions of three black males waving guns at the car wash parking lot. She stated that two of the men wore white tee shirts and one wore a blue tee shirt. While she described the bottoms worn by the three men, dispatch did not relay that information to officers.

**{¶59}** In any event, Officer Kelly was en route to the car wash lot but stopped well short when he observed three men meeting the general description of the dispatch call: three black males, two wearing white tee shirts and the other wearing a blue tee shirt. The clothing store was within walking distance from the car wash parking lot, but was 44 yards away. Officer Kelly had stopped at the store where Appellant was sitting within a short time after receiving the dispatch call. Further, the area was one of frequent violence.

**{¶60}** However, the fact that Appellant was sitting outside of his girlfriend's store and happened to be a black man in a white tee shirt accompanied by two other black men, one who wore a white shirt and one in a blue shirt is insufficient to support a *Terry* stop. First, as already discussed, the description was very general, and included no real distinguishing characteristics other than the color of their shirts and that there were three of them. While all were African-American, the record shows that the area's population was mostly African-American. Officer Kelly never went to the car wash, where the men were seen only moments before and had been during the first call, several minutes prior. There was no report that the suspects had left that location, despite the fact that the second call had just been made. Officer Kelly observed no criminal behavior by Appellant or the other men and he had no reason to believe that a crime was or would be occurring at the clothing store. While not relevant to our decision, we note that, according to Officer

Case No. 23 MA 0007

Kelly, other officers patted down the two other men accompanying Appellant and no firearms were found on them.

**{¶61}** The trial court relied, in part, on Appellant's actions after the stop in order to support the stop itself. While Appellant stood up and walked away from Officer Kelly after Officer Kelly informed him that he would perform a pat down, this fact cannot be used to justify the officer's stop. In *In re J.T.,* 1st Dist. Hamilton Nos. C-220609, C-220610, C-220611, C-220612, 2023-Ohio-2695, ¶ 29, the Ohio appellate court held that it could not consider the fact that J.T. kept walking after police ordered him to stop when determining the totality of the circumstances to justify the initial stop. *Id.,* citing *In re M.P.*, 1st Dist. Hamilton Nos. C-130663 and C-130741, 2014-Ohio-2846, ¶ 13. In *In re M.P., supra*, the court held that if police lack the initial reasonable articulable suspicion to justify a stop, the subsequent interaction between the police officer and the individual can only be consensual, so the individual is free to walk away. *M.P., supra*, at ¶ 13, citing *State v. Taylor*, 106 Ohio App.3d 741, 747, 667 N.E.2d 60 (2d Dist.1995) and *U.S. v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). Likewise, the fact that Appellant moved away from Officer Kelly during the search cannot support the initial stop here.

**{¶62}** For these reasons, we find that Officer Kelly lacked reasonable articulable suspicion to stop Appellant.

**{¶63}** Consequently, the pat down of Appellant also lacked justification. "Since the stop necessarily preceded the search, if the stop was improper, the search is also improper." *In re J.T.*, 1st Dist. Hamilton Nos. C-220609, C-220610, C-220611, C-220612, 2023-Ohio-2695, ¶ 16 [citations omitted].

**{¶64}** Accordingly, we find merit to Appellant's sole assignment of error and hold that under the totality of the circumstances, the police lacked the reasonable suspicion necessary to stop Appellant under *Terry*. Since the stop was unreasonable, the pat down of Appellant thereafter was also unreasonable.

Case No. 23 MA 0007

{¶65} The trial court therefore erred by denying Appellant's motion to suppress and its judgment is reversed, Appellant's conviction is vacated and this matter is remanded.

Waite, J., concurs.

Robb, P.J., concurs.

[Cite as *State v. Williams*, 2024-Ohio-943.]

_____

For the reasons stated in the Opinion rendered herein, the assignment of error is sustained and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is reversed, Appellant's conviction is vacated and we hereby remand this matter to the trial court for further proceedings according to law and consistent with this Court's Opinion.  Costs to be taxed against the Appellee.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**